OPINION OF THE COURT
Karen K. Peters, J.
The matter before the court concerns three petitions. The first is a petition filed by Star P.C., on February 5, 1988, requesting an order of custody of her son, Galito P. The second is a petition filed by Mr. Justino L. on February 9, 1988, requesting an order of custody of his son, Galito P. The *304 third is a petition filed by Darlene S., the infant child’s maternal aunt, and her husband, Gary S., on February 22, 1988, requesting a modification of a prior order of visitation entered by the court.
The child who is the subject of these proceedings was born on October 10, 1984. He was the subject of a paternity petition filed by the Department of Social Services on behalf of Star P.C. against Justino L. on December 21, 1984. An order of filiation and support was entered by consent on February 13, 1985. At that time the child was residing with his natural mother, Star P.C., and Mr. L. was granted visitation by the court.
Subsequent to the court’s initial order, Ms. P.C. and Mr. L. engaged in litigation concerning visitation. On August 29, 1985, the court entered another visitation order concerning Mr. L.’s visitation rights with the child, Galito. During that proceeding both petitioner and respondent were represented by counsel and the court appointed a Law Guardian for the child. In April of 1986, the court again entered an order modifying visitation. In that proceeding both parties were represented by counsel.
In September of 1986, Darlene S. and Gary S. filed a petition for custody of the infant, Galito P., against Star P.C. and Justino L. The matter was returnable in this court on November 12, 1986, at 11:00 a.m. Petitioner had provided to the court a sworn statement from the natural mother, Star P.C., to the effect that she wished to give custody of her son, Galito, to the petitioners. The respondent, Justino L., personally appeared in court and consented to an order of custody in the maternal aunt and uncle. Visitation was provided to Mr. L. in the custody order. In this proceeding neither the petitioners nor the respondents were represented by counsel.
From 1986 to the present, the issue of visitation between Star P.C. and the child, and Justino L. and the child, has been the subject of much litigation. During all proceedings both Ms. P.C. and Mr. L. were represented by counsel and a Law Guardian was involved in the case. At no time did Ms. P.C. or Mr. L. contest the validity of the prior custody order which was entered on consent.
The issue before this court is the standard of proof which should be applied in the custody proceedings which are scheduled for trial. •
Counsel for the parties have filed memoranda of law on this *305 subject matter. The court commends the attorneys involved in this proceeding for their excellent review of relevant law, and impressive arguments in support of their respective positions.
By this decision this court must determine whether the standard of proof to apply in a custody proceeding is that of the best interests of the child or whether the maternal aunt and uncle must prove extraordinary circumstances as set forth in Matter of Bennett v Jeffreys (40 NY2d 543 [1976]). Counsel for the maternal aunt and uncle will contend that the standard of proof which should be applied by the court is that of the best interests of the child. In support of her argument she cites Matter of Borst v Borst (137 AD2d 890), decided by the Appellate Division, Third Department, on February 18, 1988. Counsel for respondent, Justino L., contends that in Matter of Bennett v Jeffreys (supra) the Court of Appeals held that there must be a judicial finding of extraordinary circumstances and that this court may not determine the standard of proof to apply in this custody proceeding until the parents have an opportunity to present witnesses and the court hears testimony.
Counsel for respondent L. further contends as follows: "The parents’ earlier attempt to do the best for their child by voluntarily consenting to give custody to others for a temporary period should not later give non-parents an automatic pass from the scrutiny of the two-stage Bennett v. Jeffreys inquiry and put them directly on an equal footing with the parents on a best interests burden of proof without further court inquiry. In this case, since the initial order giving custody to the S’s was done on consent, and without a court hearing, such a result will by-pass entirely the inquiry into extraordinary circumstances required by Bennett v. Jeffreys”. This court notes that this argument would be valid if the custody order granted to the maternal aunt and uncle were a temporary order. This, however, is not the case. The custody order was a final order granted on consent, which has remained in force and effect for some time now.
Counsel for the natural mother contends that the court must apply the extraordinary circumstances standard of proof as set forth in Matter of Bennett v Jeffreys (supra). He argues that the period of interruption of custody by Star P.C. is "but one of the factors to be considered in determining whether 'extraordinary circumstances’ exist.” In support of his argument he cites Matter of Merritt v Way (85 AD2d 666 [2d Dept 1981], affd 58 NY2d 850 [1983]). In that case, upon the death *306 of the custodial parent, the child’s maternal aunt and her husband took the child. The natural father, who had been given custody of one child of the parties by a prior order contended he had a primary right to custody of this second child who was being held by the aunt and uncle. The Appellate Division reversed the trial court’s granting of custody to the nonparents, concluding that no extraordinary circumstances had been proven as required by Matter of Bennett v Jeffreys (supra). The court noted that the natural mother in her will had requested that the child reside with the maternal aunt and her husband, but that no court order of custody had been granted to them. The court specifically held, "A parent who, by reason of separation or divorce, no longer maintains the custody of his child, said custody being solely in the other parent, cannot, without more, be found to have abandoned or surrendered that child.” (Supra, at 667.) In the matter before this court both natural parents consented to custody of the infant being granted to the maternal aunt and her husband. Matter of Merritt v Way, therefore, is not on point.
Counsel for the natural mother also relies on Matter of Dickson v Lascaris (53 NY2d 204 [1981]). In that case the natural father entrusted his children to respondent in a private, unsupervised placement. The court held that upon the father’s petition for custody, custodial disruption could not, in and of itself, constitute extraordinary circumstances. In this case, no custody order was entered prior to the father’s petition for custody of the infants. Again, the facts of this case are not relevant to the matter before this court since it involved a proceeding in which no prior custody order had been entered between the parties to the litigation.
In its February 18th decision, in Matter of Borst v Borst (supra), the Appellate Division confronted a matter strikingly similar to that before this court. It involved an appeal from an order of the Family Court of Chenango County entered June 17, 1986, which dismissed petitioner’s application for custody of her child. According to the Appellate Division, that petition had been filed in October of 1985. Previously, in April 1985, a court order had entered placing the child in the care and custody of his maternal grandparents. Such order had been entered upon the consent of the Schoharie County Department of Social Services, the natural mother (petitioner herein) and the child’s Law Guardian. Upon hearing, the trial court held that custody should remain with the respondents, with reasonable visitation to the petitioner. On appeal, the Appel *307 late Division held that the governing standard on a petition to modify a prior custody award, "remains the best interest of the child under the prevailing circumstances” (supra, at 891). It is notable that in its decision the Appellate Division did not refer to Matter of Bennett v Jeffreys (supra), but rather cited Friederwitzer v Friederwitzer (55 NY2d 89 [1982]), Giordano v Giordano (93 AD2d 310 [3d Dept 1983]) and Eschbach v Eschbach (56 NY2d 167 [1982]); each of these decisions involved custody disputes between natural parents. In addition, each involved a petition to modify a prior order of custody. Both Eschbach and Giordano cited the Friederwitzer decision with regard to the conclusion that where parties have entered into an agreement as to custody, priority of that agreement, not as an absolute but as a weighty factor, should be accorded to that agreement in the absence of extraordinary circumstances. This priority has been held by the court to be afforded the first determination of custody in the belief that stability of the child is essential to his or her best interests. As noted by each court, however, an agreement of the parties cannot bind the court to a disposition if the court finds that the child’s best interests lie in custody being granted to a different party.
After reviewing relevant decisions of the Appellate Division and the Court of Appeals, this court finds that the burden of proof to be applied to the fact-finding hearing in this matter is the best interests of the child. While the agreement of the natural parents is a relevant factor that this court should consider, it will not bind the court on the petition to modify. In addition, counsel for the natural parents and the maternal aunt and uncle may well wish to present testimony as to the circumstances surrounding the agreement of custody.
If the court were to find that the custodians of Galito were required to prove extraordinary circumstances in order to retain custody of this child, it would be concluding that final orders of custody are worthless and that the custodian of a child could have no confidence in the court process since, upon demand of the natural parent, the legal custodian would bear the burden of proving that extraordinary circumstances required their continuing to have custody of the infant child. Requiring such a burden of proof to be borne by the respondents in a proceeding to modify a custody order would practically render the initial custody determination a Pyrrhic victory for the nonparent.
*308 This court finds, as a matter of law, that a petition to modify a prior order of the court entered on consent, granting custody of an infant child to a nonparent shall be governed by the standard of the best interests of the child. The standard of proof as required by Matter of Bennett v Jeffreys (supra) is not applicable.