**IN THE SUPREME COURT OF TENNESSEE**
**AT JACKSON**

**FILED**

May 3, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

FOR PUBLICATION

IN THE MATTER OF:          )
    BIANCA ARNESHE ASKEW,   )    **Filed: May 3, 1999**
                            )
                            )
DOROTHY LEWIS,             )    FAYETTE COUNTY
    Petitioner/Appellee,    )
                            )    Hon. Jon Kerry Blackwood
v.                         )    Judge
                            )
JULIE DONOHO,              )    Supreme Court
    Respondent/Appellant.   )    No. 02S01-9901-CV-00006

FOR APPELLANT
Margaret R. Barr-Myers
Memphis, TN

FOR APPELLEE
David W. Camp
Jackson, TN

# O P I N I O N

TRIAL COURT AND
COURT OF APPEALS REVERSED;
CASE REMANDED TO TRIAL COURT.

DROWOTA, J.

In this child custody case involving Bianca Arneshe Askew, now age eight years and nine months, we consider the competing claims between the child's natural mother, Julie Donoho, and Dorothy Lewis, who presently has physical custody of the child. The lower courts found that a prior court order had granted custody to Ms. Lewis and that Ms. Donoho had failed to satisfy her burden of proving that custody should be restored to her. Because we find that Ms. Donoho's constitutional right as a parent has been abridged, due to the absence of a showing of unfitness or of substantial harm, we reverse the decisions of the lower courts.

## FACTS & PROCEDURAL HISTORY

Bianca Arneshe Askew was born on August 2, 1990. Bianca's mother is Respondent/Appellant Julie Donoho and Bianca's father is Avery Askew. Petitioner/Appellee Dorothy Lewis became involved in the care of Bianca during the child's early years. Ms. Lewis is the cousin of Ms. Donoho's uncle's former wife and became acquainted with Ms. Donoho during her pregnancy with Bianca. Although the details are not clear from the record, Ms. Donoho admitted that she was "going through some problems" at the time of Bianca's birth, including employment difficulties and the rearing of her other two young children.[1] As a result, Bianca began to reside with Ms. Lewis at some point, although the record is unclear.

---

[1]Ms. Donoho has two other children, one of whom is in her legal custody and the other of whom is in the legal custody of the child's father. Ms. Donoho, however, testified that she cares for both of these children a majority of the time.

This dispute began following an order entered by the Juvenile Court of Shelby County in 1991 awarding custody of Bianca to Ms. Donoho. In February of 1994, Ms. Lewis, a resident of Fayette County, filed a petition in the Juvenile Court of Fayette County seeking custody of Bianca. As grounds, this petition simply alleged that "[t]he child has been with Ms. Lewis since Oct. 1991." After a hearing in March of 1994, the juvenile court awarded custody of Bianca to Ms. Lewis in a perfunctory order.[2]

Immediately thereafter, Ms. Donoho filed a petition for custody in the Juvenile Court of Fayette County alleging that she had not been provided with notice of the proceeding and, thus, requesting that the March 1994 order be set aside.[3] Alternatively, Ms. Donoho asserted that a change of circumstances warranted that Bianca should be returned to her custody. Following a hearing, the juvenile court found in August of 1994 that Ms. Donoho did not receive notice of Ms. Lewis's petition until the date of the hearing when she received a telephone call from the juvenile court clerk's office. The juvenile court proceeded to award "temporary custody" of Bianca to Ms. Lewis, but noted:

> the Court declines to grant the natural parents custody of the minor child until such time as they show the Court that they are able to care for the minor child; that the Court finds that the interest of the natural parents in regaining custody of their child is superior to the right of [Ms. Lewis] and that the Court is only delaying restoring custody to the natural parents. . . . It is, therefore, ordered, adjudged and decreed that . . . the Court declines to grant the natural parents custody of the minor child until such time as they show the Court that they are able to care

---

[2]This was the beginning of a procedural debacle. The petition did not allege any grounds of unfitness or dependency and neglect. The juvenile court's order did not make any finding in this regard and, in fact, the following language is explicitly crossed-out in the order: "It is contrary to the Child's welfare to remain in the care, custody, or control of her parent guardian."

[3]Bianca's father, Avery Askew, also filed a petition to set aside the order. However, he is not a party to this appeal.

for the minor child; and that the Court is hereby delaying restoration of custody to the natural parents.

The juvenile court proceeded to set forth a visitation and child support schedule. The order did not specify the conditions that the natural parents would need to satisfy in order to establish their ability to care for Bianca. Neither party appealed this order.

In March of 1996, Ms. Donoho filed a petition to restore custody, but the Juvenile Court of Fayette County entered an order holding that it would not entertain Ms. Donoho's action due to her failure to pay child support as required by the August 1994 order. In October of 1996, the child support issue apparently resolved, Ms. Donoho filed a renewed petition in the juvenile court to restore custody as well as a contempt motion against Ms. Lewis for her alleged refusal to allow Ms. Donoho to visit with Bianca. After the juvenile court entered an order denying her petition, Ms. Donoho appealed to the Circuit Court of Fayette County.

The trial court held a hearing in this case in March of 1997. Ms. Donoho offered her own testimony as well as the testimony of two of her cousins and her pastor. This testimony basically stated that Ms. Donoho has turned her life around: she is gainfully employed and has developed a stable home in which she has helped to rear her other two children. Ms. Donoho testified that she does not drink or smoke and that members of her extended family, who have helped to rear her children, live nearby. When questioned by Ms. Lewis's counsel concerning why she has neglected to adhere to the court-ordered visitation schedule with Bianca, Ms. Donoho responded that she was traumatized by Ms. Lewis's alleged harassment during the course of such visitation. When questioned regarding her failure to adhere to regular

court-ordered child support payments, Ms. Donoho maintained that she had paid all arrearages.[4]

Following the proof presented by Ms. Donoho, Ms. Lewis moved for dismissal. The trial court granted this motion, finding that Ms. Donoho had "fail[ed] to carry her burden of proof of showing 'changed circumstances.'" Ms. Donoho appealed to the Court of Appeals, asserting that the trial court did not apply the proper test. Ms. Donoho contends that due to her status as Bianca's parent and Ms. Lewis's status as a non-parent and due to Ms. Donoho's recognized fundamental constitutional parental right of privacy, the burden should have been on Ms. Lewis to demonstrate a threat of substantial harm to Bianca if she is returned to the custody of Ms. Donoho.

The Court of Appeals on September 23, 1998, found that a two-prong test must be utilized in a modification of custody dispute in which a natural parent seeks custody of a child in the custody of a non-parent. First, the non-custodial parent must demonstrate a change of his or her circumstances. Then, the non-custodial parent bears the burden of proving that a change of custody would not result in substantial harm to the child. Applying this test to the facts, the majority of the Court of Appeals found that Ms. Donoho had failed to satisfy the first prong by demonstrating that a change of circumstances existed. Thus, the majority affirmed the trial court's finding with regard to this prong and reasoned that it was unnecessary to consider the second prong. In a separate concurrence, Judge Lillard opined that Ms. Donoho had proven changed circumstances, but found that Ms. Donoho had failed to demonstrate

---

[4]Ms. Lewis's counsel suggested that all arrearages had not been paid and that Ms. Donoho would only pay the arrearages immediately prior to related legal proceedings.

that a change of custody would not result in substantial harm to Bianca. Ms. Donoho filed an application for permission to appeal on November 23, 1998. This Court granted the application on January 19, 1999, and expedited the briefing schedule and set this cause for oral argument on April 13, 1999.

**DISCUSSION**

The controversy at issue presents the Court with another opportunity to consider the delicate interplay involving the constitutional right of a parent regarding custody, the custodial right of a non-parent, and the welfare of a young child. Following this Court's recognition in Davis v. Davis, 842 S.W.2d 588 (Tenn. 1992), that the Tennessee Constitution guarantees the right to privacy, a progeny of recent cases has held that this privacy interest includes the right for parents to care for their children. In Hawk v. Hawk, 855 S.W.2d 573 (Tenn. 1993), we found that:

> In light of this right to privacy, we believe that when no substantial harm threaten's a child's welfare, the state lacks a sufficiently compelling justification for the infringement on the fundamental right of parents to raise their children as they see fit.

Id. at 577; see also Simmons v. Simmons, 900 S.W.2d 682 (Tenn. 1995); Nale v. Robertson, 871 S.W.2d 674 (Tenn. 1994).

In a recent case, Adoption of Female Child (Bond v. McKenzie), 896 S.W.2d 546 (Tenn. 1995) ("Bond"), we discussed this principle in the context of a dispute between a parent and a non-parent. In Bond, the natural mother gave birth to the child in 1987. Soon thereafter, the mother and father divorced and the mother was

-6-

awarded custody of the child. Due to the child's medical condition, the mother asked a couple to temporarily assist her in caring for the child, who was eight and one-half months old. One month later, the couple filed a petition for custody of the child. The mother joined in the petition, mistakenly believing that the petition was simply designed to allow the couple to authorize medical treatment but not to alter legal custody. Realizing her mistake after the trial court entered an order awarding custody to the couple, the mother filed a petition seeking to regain custody of the child. From 1988 until the case was resolved by this Court in 1995, the child was in the physical custody of the couple for virtually the entire time period.

After conducting a hearing on the petition, the trial court found that the mother "has not sufficiently prepared herself to parent this child." Nevertheless, the court awarded custody to the mother provided that she receive parental training and counseling. Id. at 547. The Court of Appeals reversed, finding that the child's best interest was best served by remaining in the custody of the couple. Applying cases such as Hawk, supra, and Nale, supra, we reversed the decision of the Court of Appeals, stating as follows:

> [I]n a contest between a parent and a non-parent, a parent cannot be deprived of the custody of a child unless there has been a finding, after notice required by due process, of substantial harm to the child. Only then may a court engage in a general "best interest of the child" evaluation in making a determination of custody.

Bond, 896 S.W.2d at 548. Therefore, Bond stands for the proposition that a natural parent may only be deprived of custody of a child upon a showing of substantial harm to the child.

In the present case, the Court of Appeals found that the August 1994 order of the juvenile court contained an "[i]mplicit . . . finding that Donoho was unable to care for Bianca at that time and of substantial harm to Bianca that would have resulted in awarding custody to Donoho." Noting that this order was not appealed, the Court of Appeals stated that the res judicata effect of this order made it "conclusive as between Donoho and Lewis absent a showing by Donoho of a material change in circumstances."

We cannot agree. The August 1994 order contains neither an explicit nor implicit finding of substantial harm. Nothing in the record suggests that Ms. Donoho is an unfit parent or that Bianca is a dependent and neglected child. See Tenn. Code Ann. § 37-1-129 (1996). In fact, an explicit and implicit reading of the order conveys every indication that the juvenile court intended to return Bianca to the custody of her natural parents in the near future. When granting "temporary custody" to Ms. Lewis, the juvenile court stated that "the interest of the natural parents in regaining custody of their child is superior to the right of [Ms. Lewis] and that the Court is only delaying restoring custody to the natural parents." Nothing in the record alludes to Bianca potentially being harmed by returning to the custody of her natural parents. We respectfully disagree that the juvenile court's requirement that custody is delayed until the natural parents demonstrate "that they are able to care for the minor child" indicates that the juvenile court found that a threat of substantial harm existed. The magnitude of a parent's constitutional right to rear and have custody of his or her children would necessitate a clear finding of substantial harm.

-8-

In addition, we are also troubled by the Court of Appeals' analysis of the res judicata effect of this August 1994 order. The order conveys no suggestion of finality but, instead, characterizes the custody award as "temporary," stating that "the Court is only delaying restoring custody to the natural parents," and emphasizing that the rights of the natural parents are superior to the interest of Ms. Lewis. We would characterize this order as a continuance of the case until the court heard more proof from Ms. Donoho. Under these circumstances, Ms. Donoho had virtually no incentive to appeal what was not a final order, since the juvenile court explicitly indicated that Bianca would soon be returned to the custody of her natural parents.

It appears that no valid initial determination was ever made that Ms. Donoho's custody of Bianca would result in "substantial harm" to the child. Absent such a finding, we conclude that the deprivation of the custody of her child has resulted in an abridgment of Ms. Donoho's fundamental right to privacy. Bond, 896 S.W.2d at 548; Nale, 871 S.W.2d at 680; Hawk, 855 S.W.2d at 577. In light of the unique circumstances of this case, we believe that the Court of Appeals has misapplied modification of custody principles when no valid initial order depriving the natural mother of custody existed. In the absence of such a valid initial order, we believe that it would be unconstitutional for the natural mother to bear the burden of proving the absence of substantial harm. Because the record does not show that a finding of substantial harm was made in this case, constitutional principles compel us to reverse the decisions of the lower courts.

**CONCLUSION**

-9-

In this procedurally defective case, Ms. Lewis, a non-parent, never pled any grounds sufficient to warrant custody of the child being taken away from her natural parents. Having neglected to allege that Ms. Donoho was an unfit parent, that Bianca was a dependent and neglected child, or that a danger of substantial harm to Bianca existed, Ms. Lewis also failed to prove these necessary elements before obtaining custody from the child's natural mother. Moreover, nothing in the record would support such a finding. The order of the Juvenile Court of Fayette County entered August 1994, the subject of much discussion in the Court of Appeals' opinion, was in fact erroneous if it is to be interpreted to award permanent custody of Bianca to Ms. Lewis. However, we do not so interpret that order, nor do we construe it, as the Court of Appeals did, to show a finding of substantial harm. In the absence of such a showing, Ms. Donoho should never have been deprived of the custody of her child, and the lower courts erred by requiring her to carry the burden of proof.

The decisions of the lower courts are reversed. Physical custody of Bianca Askew shall be returned to Ms. Donoho in a manner least disruptive to the welfare of the child by June 1, 1999. In the interest of the child, we implore the parties to cooperate. This cause is remanded to the trial court for supervision and enforcement of this decision.

Costs on appeal are taxed to Ms. Lewis.

_____
Frank F. Drowota, III,
Justice

**CONCUR:**

Anderson, C.J.
Birch, Holder, Barker, J.J.