IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 23, 2001 Session

# DAVID WILLIAM EASON v. MELISSA CRAFT EASON BRUCE, ET AL.

**Direct Appeal from the Chancery Court for Shelby County**
**No. D21603-1     Walter Evans, Chancellor**

_____

**No. W2000-01326-COA-R3-CV - Filed May 10, 2001**

_____

This is a post-divorce child custody case. In its initial decree, the trial court found that neither parent demonstrated sufficient interest or ability to care for the minor children and custody was awarded to the maternal grandparents. Subsequently, the trial court awarded joint custody of the children to the father and the maternal grandparents. Father petitioned for sole custody which the trial court denied. Father appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J and DAVID G. HAYES, SP. J., joined.

Richard M. Murrell, Memphis, Tennessee, for the appellant, David William Eason.

John D. Horne, Memphis, Tennessee, for the appellees, John W. Craft and Jackie Craft.

## OPINION

David William Eason (Dr. Eason) and Melissa Craft Eason Bruce (Mrs. Bruce) were granted an absolute divorce in July of 1993. In the divorce decree, the trial court found that neither Dr. Eason nor Mrs. Bruce had "demonstrated enough interest and/or ability" to be the custodian of their three children, Andrew William Eason (Andrew), Nathan Craft Eason (Nathan), and John Adam Eason (Adam). As a result, the trial court awarded custody of the children to the maternal grandparents, John W. Craft and Jackie Craft (Mr. Craft and Mrs. Craft, or collectively, the Crafts), finding that the best interests of the children would be served by such a custody arrangement.

In June of 1997, Dr. Eason petitioned the trial court for a change in custody, seeking sole custody of his three children. The trial court determined that the children were doing extremely well in the custody of their maternal grandparents and that Dr. Eason failed to demonstrate a material and substantial change in circumstances. However, the trial court granted Dr. Eason joint custody of his

three children with the Crafts, ruling that the Crafts were to remain the physical custodians and were to retain all decision making authority.[1]

Dr. Eason petitioned the trial court again for sole custody of his children in February of 2000. In his petition, Dr. Eason alleged that there had been a material change in circumstances in that he remarried, had a child, and was financially stable. Further, Dr. Eason alleged that the grandparents refused to allow him to provide dental care for the children, help them with their homework, or take them to athletic events or practices. Dr. Eason also alleged that Mrs. Craft was unable to restrain her consumption of alcohol and that Mr. Craft's health had diminished due to a stroke. After a trial on the matter, the trial court denied Dr. Eason's petition for change of custody, declaring that the children were to remain in the care, custody, and control of the Crafts. Dr. Eason appeals the judgment of the trial court and raises the following issues, as we perceive them, for this court's review:

1. Whether the trial court erred by applying the best interest of the child standard or the comparative fitness test in determining custody and by not requiring the grandparents to prove, by clear and convincing evidence, that the father was not fit or that there was a substantial risk of harm.

2. Whether the trial court erred in finding that substantial harm to the children may result from being removed from the custody of the grandparents.

3. Whether the trial court erred by excluding testimony relating to the expressions of the state of mind of the oldest child.

4. Whether the trial court erred in granting the grandparents their attorney's fees and costs.

We review a trial court's ruling on a petition to modify child custody *de novo* on the record, accompanied by a presumption of correctness, and we cannot reverse the ruling unless it is contrary to the preponderance of the evidence. *See Placencia v. Placencia*, 3 S.W.3d 497 (Tenn. Ct. App. 1999); Tenn. R. App. P. 13(d).

### Standard for Modification and the Burden of Proof

Pursuant to Article I, Section 8 of the Tennessee Constitution, parents have a constitutional right to care for their children. *See Hawk v. Hawk*, 855 S.W.2d 573, 579 (Tenn. 1993). A court may only deprive natural parents of the custody of their children after notice required by due process upon a clear finding of substantial harm to the children. *See In re Askew (Lewis v. Donoho)*, 993 S.W.2d 1, 4 (Tenn. 1999); *In re Adoption of Female Child (Bond v. McKenzie)*, 896 S.W.2d 546, 548 (Tenn. 1995). Once there has been a finding of substantial harm to the child(ren), which

---

[1] According to the record, this joint custody award to the Crafts and Dr. Eason was never appealed.

includes a finding of parental unfitness or of dependency and neglect of the child, courts may engage in a "best interest of the child" determination in making custody decisions. *In re Askew*, 993 S.W.2d at 4. In order for a court to award custody to a non-parent, it must find that neither parent is a suitable custodian. *See Bush v. Bush*, 684 S.W.2d 89, 94 (Tenn. Ct. App. 1984).

In its July 6, 1993 decree, the trial court determined that neither Dr. Eason nor Mrs. Bruce had "demonstrated enough interest and/or ability to be [the] custodian of the three minor children" and that "the welfare and best interests of said children would be served by granting their custody to" the Crafts. We believe that such language suggests that the trial court found that substantial harm to the children would result if placed in the custody of either of their parents by implicitly finding Dr. Eason and Mrs. Bruce to be unfit parents. Accordingly, the trial court then properly made a best interest determination and awarded custody of the children to the Crafts. Thus, we find the initial order depriving Dr. Eason and Mrs. Bruce of custody to be valid, and it is *res judicata* between Dr. Eason and the Crafts upon the then-existing circumstances. *See Blair v. Badenhope*, 2000 WL 1690288, at *3 (Tenn. Ct. App. Nov. 9, 2000).

In order to modify a valid, initial custody award in a dispute between a parent and a non-parent,

> the parent must . . . simply establish by a preponderance of the evidence, changed circumstances showing that an award of custody to the parent would no longer result in substantial harm to the child. This standard of proof requires evidence establishing that circumstances, which are relevant to the threat of harm to the child and which weigh against any such harm, have materially changed since the prior award of custody. This standard of proof further requires that this evidence, taken together with all other proof, establishes the absence of substantial harm to the child in the event of custodial modification.[2]

*Blair*, 2000 WL 1690288, at *4 (quoting *In re Askew*, No. 02A01-9708-CV-00201, 1998 WL 652557, at *4 (Tenn. Ct. App. Sept. 24, 1998), *rev'd on other grounds*, 993 S.W.2d 1 (Tenn. 1999)) (emphasis omitted). Thus, in the instant case, in order to modify the existing custody award, Dr. Eason must prove, by a preponderance of the evidence, that there are material changes since the prior custody determination relevant to the threat of harm to the children and that no substantial harm to the children would result if custody is returned to him.

At trial, Dr. Eason testified that there had been material changes in circumstances since the last custody hearing in that: 1) he is financially stable; 2) he is able and willing to provide a home for the children in the vicinity of their present address; 3) he is now married and has a child with his

---

[2]This standard is different from the standard for modification of custody between two parents. When two parents are involved, in order to modify custody, the non-custodial parent must prove that circumstances have changed such that the child would incur substantial harm if custody remained with the custodial parent. *See In re Askew*, No. 02A01-9708-CV-00201, 1998 WL 652557, at *4 (Tenn. Ct. App. Sept. 24, 1998), *rev'd on other grounds*, 993 S.W.2d 1 (Tenn. 1999).

current wife; 4) the Crafts refused to allow Dr. Eason to help the children with their homework; and 5) Mrs. Craft has been unable to restrain her consumption of alcohol.

During cross-examination of Dr. Eason, several of his bank statements and credit card statements were introduced into evidence. The bank statements showed several overdrafts covered by overdraft protection, and the credit card statements showed that there was little available credit remaining on any of Dr. Eason's credit cards. Dr. Eason testified that, although he currently owns a home in the children's current neighborhood, he would have to incur some minor expenses to accommodate the children in his home.

Mrs. Craft testified that she refuses Dr. Eason's requests to help the children with their homework because the children have already completed their homework assignments by the time Dr. Eason asks to help them and because she believes that it is harmful to take free time away from the children to "rehash" the homework the children have already completed. Although Mrs. Craft admitted that she drinks regularly, and that there are periods of time when she drinks every night, she testified that her behavior does not change after she drinks and that she has not sought treatment for her drinking.

After considering the arguments of counsel, the evidence, and the in camera testimony of the three children, the trial court determined that "it would be a severe emotional and psychological blow to have these children removed from the environment which they have enjoyed and flourished and are doing well in school and are very disciplined." Further, the trial court determined that Dr. Eason had not established a substantial and sufficient change of material circumstances that would warrant a modification of custody. From our review of the record, we cannot find that the evidence preponderates against the trial court's finding that a material change in circumstances has not occurred. Accordingly, we affirm the trial court's denial of Dr. Eason's petition to change custody.

### *Finding of Substantial Harm*

On appeal, Dr. Eason asserts that the trial court's finding that substantial harm to the children may result from being removed from the custody of the Crafts was erroneous. In its ruling, the trial court stated:

[T]he Court is of the opinion that it would be a severe emotional and psychological blow to have these children removed from the environment which they have enjoyed and flourished . . . .

And the Court is of the opinion that since there would be serious psychological or emotional harm that would flow to these children to be relocated, that it is in the best interests of these children that the Crafts continue as the primary custodial parents of these children . . . . it's clear that Doctor Eason's financial situation has not moved to that level where he can comfortably afford to bear the expenses which the Crafts are bearing as it relates to these children and which

obligation they will not have if custody was returned primarily to Doctor Eason who would have the responsibility of bearing all of the expenses, apparently, of these three children which, as Mr. Craft has indicated, he and his wife expend much more in the support and care of these children than the amount of monthly child support which is presently provided to these children by Doctor Eason.

We are mindful that the trial judge is in a much better position than we are to judge the weight and value of the testimony of witnesses. Accordingly, "[t]he findings of the trial judge in a non-jury case are entitled to great weight where the trial judge saw and heard the witnesses and observed their manner and demeanor on the stand . . . ." *Duncan v. Duncan*, 686 S.W.2d 568, 571 (Tenn. Ct. App. 1984) (citing *Smith v. Hooper*, 59 Tenn. App. 167, 438 S.W.2d 765 (1968)). After reviewing the record, we are of the opinion that the evidence supports the trial court's finding that the children would suffer harm from being removed from the custody of the Crafts. Accordingly, we find that the trial court's finding of substantial harm was supported by a preponderance of the evidence, and it is thus affirmed.

### *Evidentiary Ruling Regarding State of Mind*

During trial, Dr. Eason's counsel called Judy Cooper (Mrs. Cooper), a neighbor of Dr. Eason's, to testify to the children's, particularly Andrew's, feelings regarding their living arrangement. Counsel for the Crafts objected to Dr. Eason's counsel's question, "[h]as [Andrew] made statements to you regarding his living situation," on hearsay grounds. Dr. Eason's counsel argued that the testimony fell under the state of mind exception to the hearsay rule. The trial court sustained the objection, and Dr. Eason's counsel made the following offer of proof regarding why Andrew began to cry upon being asked by Mrs. Cooper if he were okay, Mrs. Cooper testified as follows:

> [Andrew] said that his grandma had been drinking the night before, that she had come upstairs and was just saying all sorts of stuff that he didn't understand, telling him to do things he didn't know what to do.

> Q:     Were there other statements that he made to you at that time?

> A:     He said that he had told me that he wanted to go and live with his dad.

> Q:     After this occasion, were there any other incidents similar to this?

> A:     He didn't cry, but, yes, there was another similar incident without all the tears, just being upset.

> Q:     How did that conversation initiate?

-5-

A: Basically, when the kids get in the car, I always say, did you have a good day, are you okay and it was basically the same way. I asked him if he was okay and he told me no.

Q: Were there other people present at the time?

A: No.

Q: And when he responded to you that he was not okay or responded no, did he proceed to tell you why he was not okay?

A: Yes, he did.

Q: What did he tell you at that time?

A: He told me that he was going to move in with his dad that week, he was going to move in with his dad. This was like on a, I want to say maybe a Tuesday.

Q: Did he tell you why he was going to move in with his dad?

A: Because of his grandmother's drinking.

Rulings on the admissibility of evidence is within the sound discretion of the trial judge and will be overturned on appeal only upon a showing of abuse of discretion. *See Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439 (Tenn. 1992).

The state of mind exception to the hearsay rule, Rule 803(3) of the Tennessee Rules of Evidence, provides that the following statements are admissible in evidence:

> **(3) Then Existing Mental, Emotional, or Physical Condition.** A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Tenn. R. Evid. 803(3). The advisory commission comment provides that "declarations of mental state will be admissible to prove mental state at issue or subsequent conduct consistent with that mental state." Tenn. R. Evid. 803(3) advisory comm'n cmt. For example, in the case of *State v. Middlebrooks*, 840 S.W.2d 317, 329-30 (Tenn. 1992), the defendant was on trial for murder and aggravated kidnaping, and the trial court permitted a witness to testify, pursuant to the state of mind exception, to the defendant's racially biased statements which the defendant made to the witness on

-6-

the morning of the murder. The defendant appealed, arguing the testimony was inadmissible hearsay. The supreme court found no merit in the defendant's argument, and it thus affirmed the trial court's decision. *See id.* Additionally, in *State v. Hicks*, 835 S.W.2d 32, 39 (Tenn. Cr. App. 1992), a witness testified that the defendant said he was going to "stick" someone before the night was over and that the defendant made the statement to the witness twenty to thirty minutes before the defendant committed the murder. The trial court ruled that the evidence was admissible, finding that the statement was probative of the defendant's state of mind leading up to the murder. The supreme court affirmed the trial court's decision. *See id.*

Upon review of the offer of proof, we conclude that the testimony of Mrs. Cooper was offered for the truth of the matter asserted - that Andrew wanted to live with Dr. Eason because of Mrs. Craft's drinking - and not to demonstrate Andrew's state of mind. Accordingly, we find that the trial court did not abuse its discretion by ruling that the testimony was inadmissible hearsay pursuant to Rule 801 of the Tennessee Rules of Evidence, and we thus affirm the trial court's ruling on this issue.

### *Attorney's Fees and Costs*

Section 36-5-103(c) of the Tennessee Code provides for a person to whom custody is awarded to recover his or her reasonable attorney's fees incurred in any action regarding custody or a change of custody. *See* Tenn. Code Ann. § 36-5-103(c) (Supp. 2000). The decision to award attorney's fees is within the discretion of the trial court. *See Richardson v. Richardson*, 969 S.W.2d 931, 936 (Tenn. Ct. App. 1997). Because the trial court's award of attorney's fees is permitted by section 36-5-103(c) of the Tennessee Code, and because we find that the trial court did not abuse its discretion in awarding the Crafts their reasonable attorney's fees, we affirm the trial court's award of attorney's fees to the Crafts. The Crafts also request their attorney's fees on appeal. *See D v. K*, 917 S.W.2d 682, 687 (Tenn. Ct. App. 1995). We deny this request.

### *Conclusion*

For the foregoing reasons, we affirm the trial court's denial of Dr. Eason's petition for change of custody and its subsequent ruling in all respects. The costs of this appeal are taxed to the Appellant, Dr. David William Eason, and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE