IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 27, 2009 Session

## DAVID M. SHARP v. DEBBIE F. STEVENSON, ET AL.

**Direct Appeal from the Chancery Court for Obion County**
**No. 24,758     W. Michael Maloan, Chancellor**

**No. W2009-00096-COA-R3-CV - March 10, 2010**

The trial court denied Father's petition to modify custody of his three minor children, who are in the custody of their maternal grandparents. We vacate the trial court's order and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated;**
**and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court. J. STEVEN STAFFORD, J., filed a concurring opinion. HOLLY M. KIRBY, J., filed a dissenting opinion.

James T. Powell, Union City, Tennessee, for the appellant, David M. Sharp.

Jeffrey W. Parham, Martin, Tennessee, for the appellees, Debbie F. Stevenson and Michael W. Stevenson.

## OPINION

This is a child custody case in which a father seeks to regain custody of his minor children from their maternal grandmother and step-grandfather. We begin this Opinion by noting that the record transmitted to this Court provides little information about the background of this case. It is undisputed, however, that David M. Sharp (Mr. Sharp) and Barbie H. Sharp (Ms. Sharp) are the parents of three minor children. The two youngest children are the parties' biological children; the eldest child, Alexis, is Ms. Sharp's biological child and was adopted by Mr. Sharp. Apparently, in 2003, Mr. Sharp and the children's maternal grandmother, Debbie F. Stevenson, and her husband, Michael W. Stevenson ("the Stevensons"), were awarded temporary custody of the children. Mr. Sharp and Ms. Sharp subsequently were divorced in 2004, and Mr. Sharp was named primary residential parent of the minor children in their marital dissolution agreement. The status of the Stevensons

following the divorce and naming of Mr. Sharp as primary residential parent cannot be determined from the record. Apparently, the children were removed from Mr. Sharp's custody by a temporary restraining order entered in May 2005, and he subsequently filed a petition to modify custody and to dismiss the temporary custody/restraining order in July 2005. It does not appear whether this motion was adjudicated or dismissed.

The technical record transmitted to this Court begins with a May 2007 "consent order" that was approved by legal counsel for Mr. Sharp and the Stevensons and entered by the Chancery Court for Obion County in May 2007. The order stated only that "parties and/or their respective counsel . . . agree[d] and the [c]ourt [found] that the Permanent Parenting Plan entered simultaneously herewith shall be entered into the [c]ourt record." A document styled "Permanent Parenting Plan Order" was entered by the court. Although the style of the case recited on the consent order was "David M. Sharp, Plaintiff/Respondent v. Barbie H. Sharp, Defendant/Respondent, Debbie F. Stevenson and Michael W. Stevenson, Intervenor/Third Party Movants", it does not appear from the record that Ms. Sharp or her counsel signed the order or parenting plan, or that they were served with either.

In December 2007, Mr. Sharp filed a petition to modify custody. In his petition, Mr. Sharp asserted that the parties had entered into a consent order and permanent parenting plan in May 2007; that there had been a substantial material change of circumstance "which would require modification of the Parenting Plan"; and that it was in the best interests of the children to "return to the primary care" of Mr. Sharp. Mr. Sharp served the petition on the Stevensons and appears to have served it on Ms. Sharp. The Stevensons responded and denied Mr. Sharp's allegations. It does not appear that Ms. Sharp was served with the Stevenson's response or with any other pleadings. Following unsuccessful attempts to mediate, Mr. Sharp moved to amend his pleading to include his superior parental rights as grounds for modification. It does not appear that Ms. Sharp was served with this motion. The trial court granted Mr. Sharp's motion in December 2008. The trial court's order granting the motion was approved for entry by attorneys for Mr. Sharp and the Stevensons. It does not appear that it was approved by Ms. Sharp or her counsel, or that she received notice of the court's order.

The trial court heard the matter in December 2008. On January 7, 2009, the trial court entered its order denying Mr. Sharp's petition to modify. In its order, the trial court stated that it found no change in circumstance since entry of its last order. The trial court incorporated "findings of fact and conclusions of law as set forth . . . in its ruling, attached . . . as Exhibit A[.]" The order was approved for entry by legal counsel for Mr. Sharp and the Stevensons, but it does not appear to have been approved by or served on Ms. Sharp or her counsel. Additionally, Exhibit A is not included in the record. Mr. Sharp filed a timely notice of appeal to this Court.

### Issues Presented

Mr. Sharp presents the following issues, as slightly reworded, for our review:

(1)     Whether the trial court erred in failing to apply the superior parental rights doctrine.

(2)     Whether the trial court erred in failing to find a material change of circumstance that warranted a return of custody to Mr. Sharp.

### Standard of Review

We review the trial court's findings of fact with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). Accordingly, we will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. We review the trial court's conclusions on matters of law *de novo*, however, with no presumption of correctness. Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

### Discussion

Mr. Sharp asserts that the trial court erred by failing to apply the superior parental rights doctrine in this case. He asserts that he did not waive his superior parental rights to his children, and that the court erroneously applied the change in material circumstance test to this custody modification case. Mr. Sharp additionally asserts, in the alternative, that the trial court erred in finding that a material change in circumstance has not occurred since entry of the prior custody order.

We begin our discussion by again noting that it is difficult to determine the complete procedural posture or background facts of this case from the record before us. In the trial court, however, Mr. Sharp, testified that the custody order placing the children in the Stevenson's custody was temporary; that the "permanent parenting plan order" was a parenting plan that he entered into as a binding agreement in order to secure more visitation with his children, and not an order of permanent custody; and that he did not intend to give up his rights as a parent. He also testified that the Stevensons had been the primary caregivers of the children since 2005, and that the children were doing well in their care. Mr. Sharp's testimony was uncontroverted.

It is well-settled that parents have a fundamental right to the custody and care of their children. *Hawk v. Hawk*, 855 S.W.2d 573, 577 (Tenn. 1993); *Askew v. Donoho*, 993 S.W.2d 1, 4 (Tenn. 1999). Therefore, in an initial custody proceeding between a parent and a non-

parent, a natural parent has superior rights and cannot be deprived of the custody of their child absent a showing of substantial harm to the child.[1] *Blair v. Badenhope,* 77 S.W.3d 137, 143 (Tenn. 2002); *Askew v. Donoho*, 993 S.W.2d 1, 4 (Tenn. 1999). The burden is on the non-parent to demonstrate substantial harm to the child. *Id.* Only after the trial court has made a finding of substantial harm to the child may it engage in a best interest of the child analysis.[2] *Blair*, 77 S.W.3d at 142. In a proceeding to modify custody from a non-parent to a parent, however a parent enjoys superior parental rights only if 1) there has been no order transferring custody from the natural parent or if 2) the order transferring custody from the natural parent was accomplished by fraud or without notice; 3) the order is invalid on its face; 4) the natural parent has ceded only temporary and informal custody. *Id.* at 143. An order transferring custody from a parent to a non-parent in a contested case is not valid absent a finding of substantial harm to the child. *Askew*, 993 S.W.2d at 5. Because such an order is invalid, under *Blair*, a natural parent may assert the superior parental rights doctrine in a subsequent modification proceeding. *In Re T.M.S.*, No. W2004-02867-COA-R3-JV, 2005 WL 1848477, at *9 (Tenn. Ct. App. Aug. 5, 2005), *perm. app. denied* (Tenn. Dec. 27, 2005).

In *Blair v. Badenhope*, the supreme court addressed whether a natural parent may assert superior parental rights in a custody modification proceeding where the order transferring custody to the non-parent resulted from a voluntary transfer of custody. The court held, "a parent's voluntary consent to cede custody to a non-parent defeats the ability of that parent to later claim superior parental rights in a subsequent proceeding to modify custody." *Blair v. Badenhope,* 77 S.W.3d 137, 147 (Tenn. 2002). The court held that where a parent was afforded the opportunity to assert their superior parental rights but voluntarily permitted the transfer of custody to a non-parent, "with knowledge of the consequences of that transfer," then the voluntary transfer "effectively operates as a waiver of these fundamental parental rights." *Id.* at 147. Thus, where a custody order transferring custody to a non-parent has been entered by consent of the parties, the natural parent may not assert

---

[1]It is well-settled that adoptive parents enjoy the same constitutionally protected rights as biological parents. *Simmons v. Simmons*, 900 S.W.2d 682, 685 (Tenn. 1995).

[2]As we have noted previously, the circumstances that would support a finding of a risk of substantial harm to the child have not been fully defined by the courts. However, the term "substantial . . . connotes a real hazard or danger that is not minor, trivial, or insignificant." *Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001). It also "indicates that the harm must be more than a theoretical possibility." *Id.* Although it "need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not." *Id.* A finding of parental unfitness or of child dependency and neglect, and the circumstances identified by the General Assembly in the termination of parental right statutes, relocation statutes, and grandparent visitation statutes, provide guidance to the courts when determining whether a child would face a risk of substantial harm if not removed from a parent's custody. *Id.* at n.6 & 7.

superior parental rights in a modification proceeding even where there has been no finding of substantial harm to the child. *Id.* at 148.

In *Blair*, the court reasoned that, absent the four circumstances recited above, to permit the application of the superior parental rights doctrine in custody modification proceedings would "effectively render existing orders of custody to non-parents practically worthless." *Id.* at 149. The court responded to the dissent's concern that parents may not fully appreciate or understand the effect of waiving their superior parental rights by voluntarily relinquishing custody by emphasizing that the transfer of custody "must be made with knowledge of the consequences of that decisions." *Id.* at 148 n.3. The court noted that, absent such knowledge, the superior parental rights doctrine would be applicable in a subsequent proceeding. *Id.*

Thus, in a proceeding to modify a valid, voluntary order ceding custody from a parent to a non-parent, the parent will be deemed to have waived their superior parental rights presuming the parent was "afforded the opportunity to assert superior parental rights." *Id.* at 147. In light of that presumption, the parent petitioning to modify the custody order bears the burden of demonstrating that application of the superior parental rights doctrine is justified. *See id.* at 149 (quoting, with approval, *Darlene S. v. Justino L.*, 141 Misc.2d 303, 533 N.Y.S.2d 179, 182 (N.Y. Fam. Ct. 1988); *see also Dep't of Children's Servs. v. Dalton*, No. E2007-01216-COA-R3-JV, 2008 WL 2811305, at \*6 (Tenn. Ct. App. July 22, 2008)(*no perm. app. filed*)(holding petitioner had the burden of establishing they were not afforded presumption of superior legal rights at lower court hearing). To hold otherwise would create a situation where

> final orders of custody are worthless and . . . the custodian of a child could have no confidence in the court process since, upon demand of the natural parent, the legal custodian would bear the burden of proving that extraordinary circumstances required their continuing to have custody of the infant child. Requiring such a burden of proof to be borne by the respondents in a proceeding to modify a custody order would practically render the initial custody determination a Pyrrhic victory for the non-parent.

*Blair v. Badenhope,* 77 S.W.3d 137, 149 (Tenn. 2002)(quoting *Darlene S. v. Justino L.*, 141 Misc.2d 303, 533 N.Y.S.2d 179, 182 (N.Y. Fam. Ct. 1988)). As the supreme court opined in *Blair v. Badenhope*, "[w]e must respect valid orders of custody, and we will not lightly embrace a rule that effectively renders such orders without effect or worth." *Id.* at 150 (footnote omitted).

A parent's voluntary relinquishment of custody to their child, "confirmed in a valid

order of custody," operates as a waiver of superior parental rights and the best interests of the child take on "a more dominant role . . . in determining whether" the parent is entitled to a return of custody. *Id.* at 150 n.5. Thus, in a proceeding to modify custody, the petitioner must demonstrate a material change of circumstance such that modification is in the best interests of the child, and parents are not entitled to assert superior parental rights "absent [the] extraordinary circumstances" recited in *Blair v. Badenhope*. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 811 (Tenn. 2007)(quoting *Blair v. Badenhope*, 77 S.W.3d at 143). The burden is on the parent seeking to modify the permanent custody order to demonstrate that they were misled as to the consequences of their actions, uninformed regarding the provisions of the order, or not afforded the opportunity to assert their superior parental rights. *See id.* at 812. Absent such a showing, the parent must demonstrate that a material change of circumstance has occurred such that a modification of custody is in the child's best interest. *Blair v. Badenhope*, 77 S.W.3d at 150.

In the case now before us, Mr. Sharp's testimony regarding the circumstances and intent of the "permanent parenting plan" entered by the trial court in May 2007 was not controverted. Additionally, the circumstances described by the trial court at the hearing of this matter, and the wording of the parenting plan itself, support Mr. Sharp's characterization of the plan as an agreement regarding visitation and responsibilities, and not an agreement to cede permanent custody to the Stevensons.

It is undisputed that the plan was entered into by Mr. Sharp and the Stevensons in response to Mr. Sharp's 2005 petition to modify the court's order awarding the Stevensons temporary custody. Apparently, nothing transpired in the trial court between November 2005, when the parties entered into an agreed order for custodial evaluations and Mr. Sharp agreed to undergo drug testing, and entry of the parenting plan in May 2007. The May 2007 parenting plan contained in the record is a slightly modified version of a parenting plan which would be entered into between natural parents in a divorce proceeding. It states that the "primary residence" would be with the Stevensons, and establishes a parenting schedule giving Mr. Sharp 104 days of parenting. Under the plan, Mr. Sharp and the Stevensons had "responsibility for the care of the children" on their respective parenting days. The plan also granted Mr. Sharp "additional *parenting* time every Monday and Tuesday from 4:00 to 8:00 p.m." (Emphasis added). The plan provides that Mr. Sharp would "be responsible for making sure that the children get to their activities any time he is exercising parenting time." It establishes a holiday schedule, and provides "[e]ach parent shall make decisions regarding the day-to-day care of a child while the child is residing with that parent, including any emergency decisions affecting the health or safety of the child," that major decisions would be discussed between the parties, and that the Stevensons would make non-emergency health care decisions. The plan stated that the Stevensons were receiving child support in an unspecified amount and that Mr. Sharp would provide health insurance, and provided a

schedule for income tax deductions.  The plan also provided that the children's mother, Ms. Sharp, would not be allowed any unsupervised parenting time.  It further provided that "both parents" would be entitled to the statutory rights provided at Tennessee Code Annotated § 36-6-101, and that disputes would be submitted to mediation before resort to the courts.  There is nothing in the plan to suggest that Mr. Sharp agreed to relinquish his superior parental rights to the children, or to grant the Stevensons permanent custody.  On the contrary, the word "custody" does not appear in the plan, and Mr. Sharp unambiguously retained considerable parental decision-making under the agreement.  The consent order entered by the trial court simultaneously with the plan likewise does not contain the word "custody."  It simply states that the parties had agreed to a "permanent parenting plan."

We generally consider the trial court to be in the best position to interpret and construe its own orders, even when a trial judge has no independent memory of the proceedings in a cause of action.  *Richardson v. Richardson*, 969 S.W.2d 931, 935 (Tenn. Ct. App. 1997).  However, like other written instruments, court orders should be interpreted according to the plain meaning of the words used. When the language is unambiguous, then the literal meaning of the words used is controlling. *Konvalinka v. Chattanooga-Hamilton County Hosp.*, 249 S.W.3d 346, 359 (Tenn. 2008) (citations omitted).  In this case, the trial court's conclusion that the parenting plan entered in May 2007 was intended by the parties to be a permanent custody order that replaced the prior temporary order simply is not supported by the plain language of the plan.  Rather, the language of the parenting plan supports a conclusion that it was a mediated compromise intended to modify the temporary order of custody by establishing a parenting schedule and delineating rights and obligations.

Additionally, as noted above, Mr. Sharp's testimony regarding the intent and nature of the plan was uncontroverted at the hearing of this matter.  Although, as the dissent notes, the trial court did not believe that Mr. Sharp had been "mislead," we do not believe Mr. Sharp asserted that he was actively mislead.  Rather, Mr. Sharp testified that he believed that the parenting plan was a binding agreement that could be changed as material circumstances changed.  Even if we assume that the trial court made an implicit credibility determination, a determination to which we give great deference, a trial court's credibility determination may be reversed when other real evidence compels a contrary conclusion. *E.g., Wright Medical Technology, Inc. v. Grisoni, 135 S.W.3d 561, 593 & 597 (Tenn. Ct. App. 2001)(reversing the trial court's finding on credibility as "clearly erroneous"); In re adoption of Kleshinski*, No. M2004-00986-COA-R3-CV, 2005 WL 1046796, at *22 (Tenn. Ct. App. May 4, 2005)(holding that, when considering whether clear and convincing evidence supports a finding of grounds for parental termination, "we must look at the aggregate of the evidence to ascertain whether its combined weight amounts to 'clear and convincing' evidence" notwithstanding the trial court's assessment of credibility).  In this case, there is simply no evidence to support the trial court's determination that Mr. Sharp

intended to cede custody to the Stevensons and waive his superior parental rights.

The dissent observes that the parenting plan contained in the record "was essentially a standard form for a parenting plan for two divorced parents that had been modified to name the Stevenson, the grandparents, as the 'primary residential parents.'" The dissent further observes that the custody orders formerly entered in divorce proceedings "was ultimately not descriptive of the allocation of parenting responsibilities in a divorce," and that the legislature chose to alter the terms used in parenting plans between two natural parents in order that the plans be "more accurate in describing the roles of divorced parents." We agree. However, we must disagree with the dissent that the legislature merely changed the terms in order to "us[e] language that was less divisive." Rather, the legislature recognized that, although a child might reside primarily with one parent, the other parent is not relegated to a less-than-parent status. On the contrary, the current parenting plans, which are designed to fully describe each parent's rights and responsibilities as a full parent, preserve each parent's superior parental rights with respect to any claims which might be asserted by a non-parent. An "alternate residential parent" does not waive his or her superior parental rights merely by agreeing not to be named the "primary residential parent." Although the courts may continue to use the word "custody" to refer to primary residential parent designation, we do so inaccurately.

We must also disagree with the dissent that this holding results in an interpretation of parenting plans that "destabilize[s] existing agreed parenting plans." On the contrary, our holding reflects the intention of the legislature that parenting plans be interpreted as binding agreements between two parents who, although divorced, continue in their roles of parents. The intention of the legislature to foster cooperation between divorcing parents is more fully achieved by recognizing that parents who enter permanent agreed parenting plans, whether named primary or alternate residential parent, maintain their status as parents with the attendant rights and responsibilities, including rights superior to those of third parties. Non-parents seeking custody of a minor child must demonstrate that the natural parent is unfit, or that substantial harm will result if the child is placed in that parent's care, regardless of whether the natural parent is the primary residential parent or the alternate residential parent. A parenting plan is simply not the equivalent of a valid order awarding custody to a non-parent.

Mr. Sharp has demonstrated by a preponderance of the evidence that he did not waive his superior parental rights by allowing the Stevensons to be named primary residential parents when the parenting plan was entered in the trial court in May 2007. Accordingly, Mr. Sharp's petition to regain custody could only be denied by the trial court upon a finding of a risk of substantial harm to the children. The Stevensons carry the burden to demonstrate a risk of substantial harm by clear and convincing evidence. *Ray v. Ray*, 83 S.W.3d 726, 733

(Tenn. Ct. App. 2001).

Additionally, as noted above, the style of this case indicates that the Stevensons became parties by intervening in the matter between Mr. Sharp and Ms. Sharp. The record before us does not contain an order permitting the Stevensons to intervene, and it likewise does not contain an order dismissing Ms. Sharp. Although Mr. Sharp served his petition to modify on Ms. Sharp, and although Ms. Sharp undisputedly had actual notice of the proceedings where she testified at the 2008 hearing of the matter, it does not appear from the record that Ms. Sharp was served with all of the pleadings or with the trial court's order denying Mr. Sharp's petition to modify. Further, it does not appear from the record that Ms. Sharp was served with the May 2007 parenting plan, which prohibited Mr. Sharp and the Stevensons from leaving the children with her unsupervised. It is not clear from the record whether the trial court previously had entered an order adjudicating Ms. Sharp's parental or visitation rights. Accordingly, we are unable to determine whether the trial court's orders of May 2007 and January 2009 were validly entered pursuant to Rule 58 of the Tennessee Rules of Civil Procedure. We urge the trial court and the parties to ensure that all remaining parties to this matter have been properly served and that the court's final order is entered in conformance with Rule 58. The Stevensons seek to recover their attorney's fees which we decline.

### *Holding*

In light of the foregoing, we vacate the order of the trial court and remand for further proceedings consistent with this Opinion. All other issues are pretermitted. Costs of this appeal are taxed to the Appellees, Debbie F. Stevenson and Michael W. Stevenson.

_____
DAVID R. FARMER, JUDGE

-9-