IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
September 6, 2001 Session

## ARTHUR BLAIR  v.  MARILYN BADENHOPE

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Chancery Court for Greene County**
**No. 93-101     Hon. Thomas R. Frierson, II, Chancellor**

---

**No. E1999-02748-SC-R11-CV - Filed May 3, 2002**

---

This case addresses the applicable standard to modify a child-custody order awarding custody to a non-parent.  In 1993, the child's natural father agreed to give custody to the child's maternal grandmother, and a consent order was entered accordingly.  The father later petitioned to modify that order, asserting that a material change in circumstances had occurred and claiming that he had a superior parental right to the custody of his daughter.  The trial court denied the petition, finding that no material change in circumstances had occurred warranting modification, and a majority of the Court of Appeals affirmed.  We granted the father's application for permission to appeal and hold that a natural parent cannot generally invoke the doctrine of superior parental rights to modify a valid order of custody, even when that order resulted from the parent's voluntary consent to give custody to the non-parent.  Instead, a natural parent seeking to modify a custody order that grants custody to a non-parent must show that a material change in circumstances has occurred, which makes a change in custody in the child's best interests.  We also affirm the judgment of the Court of Appeals finding that the father has not shown a material change in circumstances that makes a change of custody in his daughter's best interests.

**Tenn. R. App. P. 11 Application for Permission to Appeal;**
**Judgment of the Court of Appeals Affirmed**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which E. RILEY ANDERSON and JANICE M. HOLDER, JJ., joined.  FRANK F. DROWOTA, III, C.J., filed a concurring-dissenting opinion, and ADOLPHO A. BIRCH, JR., J., filed a dissenting opinion.

Edward Kershaw, Greeneville, Tennessee, for the appellant, Arthur Blair.

John T. Milburn Rogers, Greeneville, Tennessee, for the appellee, Marilyn Badenhope.

**OPINION**

# FACTUAL BACKGROUND

In November 1989, Susan Badenhope gave birth to her daughter, Joy. She was unmarried at the time of Joy's birth, and Joy's father, Mr. Arthur Blair, initially denied paternity. Unfortunately, Susan Badenhope soon became ill with terminal cancer, and she passed away in October 1990. During the length of her illness, she and her daughter were cared for by Ms. Marilyn Badenhope, Joy's grandmother.

After her mother's death, Joy went to live with her grandmother. In December 1990, Ms. Badenhope filed a petition seeking custody of Joy, and the court granted her temporary custody later that month.[1] Mr. Blair was permitted to contest the action after establishing his paternity through a blood test, and the court held a hearing on the custody petition in April 1992. Although the parties presented witnesses at this hearing, they settled the case before submitting it to the court, agreeing that Ms. Badenhope should have lawful custody of Joy. This consent order, which also gave Mr. Blair specified visitation rights, was accepted by the court, and on March 16, 1993, Ms. Badenhope was granted custody of Joy.

About one month later, Mr. Blair petitioned the Greene County Chancery Court to modify the custody order and award him custody of Joy. Sometime before the March 1993 order, he married and moved to Greene County to be closer to Joy. However, the chancery court found that these facts alone did not constitute a material change in circumstances warranting a modification of custody, and on June 30, 1995, the court denied his petition to modify the custody order. This decision was affirmed by the Court of Appeals in October 1996. See Blair v. Badenhope, 940 S.W.2d 575 (Tenn. Ct. App. 1996), *perm. to appeal denied*, March 17, 1997.

In July 1997, Mr. Blair again petitioned to gain custody of his daughter. In this petition, Mr. Blair alleged that a material change in circumstances had occurred primarily due to the strengthening of his relationship with Joy. Mr. Blair also asserted that he, as Joy's natural father, enjoys a presumption of superior parental rights against any non-parent seeking or retaining custody of his children and that he cannot be denied custody of his daughter unless he is shown to be an unfit parent.

On August 30-31, 1999, the trial court held a hearing on the petition, limiting the scope of its inquiry to facts arising between the denial of the first petition and the filing of Mr. Blair's second petition. Mr. Blair introduced evidence showing that, since 1995, he and his wife had purchased a new home in a subdivision that has other children who are close to Joy's age. He also testified that he has developed a stronger relationship with Joy since 1995—a fact confirmed by Joy herself—and that Joy has expressed an interest in living with him permanently. With regard to his employment,

---

[1] Although herself a resident of Tennessee, Ms. Badenhope filed this petition in Mecklenburg County, North Carolina, because both Joy and Joy's father were residents of that state. The parties agree that the North Carolina court properly asserted jurisdiction over the petition, and they raise no dispute as to the validity of the court's subsequent award of custody.

Mr. Blair testified that he works up to sixty-five hours a week and that he frequently travels out of town. Nevertheless, he testified that he telephones Joy on a daily basis and that he changes his work schedule to be home during Joy's scheduled visitation. Finally, Mr. Blair's wife testified that Joy asked to be adopted by her.

Ms. Badenhope testified that she retired in 1995 as a registered nurse from the Veteran's Administration. She is frequently involved in the activities of Joy's school, serving as homeroom mother, accompanying Joy's class on field trips, and participating in the school's hot lunch program. Ms. Badenhope also keeps Joy involved in several church and other community activities. In addition, the record shows that Ms. Badenhope has willingly encouraged a relationship between Joy and her father, though she apparently limited the phone calls from the Blairs because of their alleged persistence in encouraging Joy to live with them.

As the parties have conceded, Joy is an "outstanding, well-adjusted[,] happy, wonderful child." The record indicates that Joy has a good academic record and that she received all "A's" during the 1996-97 school year. Joy also testified that she enjoys spending time with her father and that she has many friends in her father's new neighborhood.

After considering the evidence, the trial court denied Mr. Blair's petition to modify custody. The court acknowledged that Mr. Blair was a fit parent and that his relationship with Joy had grown stronger since 1995. However, the court found that these considerations did not amount to a material change in circumstances warranting a change in custody.

The trial court further found that Joy would be harmed if custody were returned to Mr. Blair. Finding that Mrs. Blair pursued an extended extramarital relationship that ended in 1997, the court found that the Blairs' home environment was not stable. Conversely, the court found that the environment provided by Ms. Badenhope was "stable and secure" and was one in which Ms. Badenhope and Joy enjoyed a loving relationship. Consequently, upon considering the totality of the circumstances, the trial court concluded that awarding custody to Mr. Blair would result in substantial harm to Joy.

Mr. Blair appealed to the Court of Appeals, and a majority of that court affirmed the trial court's decision. Citing this Court's decision in In re Askew, 993 S.W.2d 1 (Tenn. 1999), the intermediate court first acknowledged that parents have a fundamental right to the care and custody of their children. The court then applied a two-pronged test to determine whether a natural parent should prevail in a custody modification dispute vis-à-vis a non-parent: (1) whether the non-custodial natural parent demonstrated a material change in circumstances; and (2) whether awarding custody to the natural parent would result in substantial harm to the child. Applying this test, a majority of the Court of Appeals agreed that Mr. Blair failed to establish a material change in circumstances and that the evidence did not preponderate against the trial court's finding that awarding custody to Mr. Blair would result in substantial harm to Joy.

Writing in dissent, Judge Susano disagreed that the majority applied the correct standard of review. Instead, he believed that the proper inquiry was only whether returning the child to the natural parent would result in substantial harm to the child. To adopt the majority's standard, he wrote, "is to do substantial violence to the Father's fundamental constitutional right to rear and care for his child without interference from the state."

We granted Mr. Blair's application for permission to appeal and hold that absent extraordinary circumstances discussed below, a natural parent cannot generally invoke the doctrine of superior parental rights to modify a valid order of custody, even when that order resulted from the parent's voluntary relinquishment of custody to the non-parent. We also hold that the natural father in this case has failed to show that a material change in circumstances has occurred that would warrant a change in Joy's custody arrangement. The judgment of the Court of Appeals is affirmed.

## THE PROPER STANDARD TO APPLY IN PARENT vs. NON-PARENT CUSTODY MODIFICATION CASES

The law is now well-settled that the Tennessee Constitution protects the fundamental right of natural parents to have the care and custody of their children. See Nale v. Robertson, 871 S.W.2d 674, 680 (Tenn. 1994); Hawk v. Hawk, 855 S.W.2d 573, 579 (Tenn. 1993). Through Article I, section 8 and its implicit recognition of parental privacy rights, our Constitution requires that courts deciding initial custody disputes give natural parents a presumption of "superior parental rights" regarding the custody of their children. See In re Askew, 993 S.W.2d 1, 4 (Tenn. 1999). Simply stated, this presumption recognizes that "parental rights are superior to the rights of others and continue without interruption unless a biological parent consents to relinquish them, abandons his or her child, or forfeits his or her parental rights by some conduct that substantially harms the child." See O'Daniel v. Messier, 905 S.W.2d 182, 186 (Tenn. Ct. App. 1995).

Importantly, however, unlike our previous cases addressing parents' rights to the care and custody of their children, this case does not involve the standards applicable in making an *initial* award of child custody between a parent and a non-parent. Rather, we are asked to address whether our Constitution enables parents to assert the superior parental rights doctrine in order to *modify* a valid court order awarding custody to a non-parent. Mr. Blair, as the natural parent seeking modification of the original custody order, argues that the doctrine of superior rights must be applied in modification cases, just as it is to be applied in original actions for custody. He also argues that he is entitled to the presumption of superior parental rights because no court has ever found him to be an unfit parent. We disagree with both of these arguments, but because this Court has not previously addressed these precise issues before us today, it is perhaps helpful to first review how we have traditionally interpreted our Constitution, with its right of parental privacy, in similar types of cases.

*HISTORY OF PARENT vs. NON-PARENT CUSTODY*
*DISPUTES IN TENNESSEE*

The first time that this Court balanced the rights of parents and non-parents in a child custody case appears to have been in 1937 in Stubblefield v. State ex rel. Fjelstad, 171 Tenn. 580, 106 S.W.2d 558 (1937). In Stubblefield, a mother left her husband in New York and traveled with her daughter to Arkansas, where she obtained a secret divorce and an order of custody. The mother then moved to Memphis to live with her grandfather and uncle. Sometime after this move, she died and left physical custody of her daughter to them.

The father later discovered the secret divorce and award of custody to the mother, and he petitioned the Tennessee courts to return custody of his daughter to him. This Court agreed that the father had a lawful right to the custody of his daughter vis-à-vis the grandfather and uncle, especially in the absence of a valid order transferring custody to the grandfather and uncle. In so declaring, we stated that "[t]he parent's right [to custody] is certainly paramount, other considerations being equal. . . . The court cannot lightly, and without good cause, invade the natural right of the parent to the custody, care, and control of his infant child." Stubblefield, 171 Tenn. at 587, 106 S.W.2d at 560-61. Interestingly, this Court also made clear that there "is no absolute right in the parent to the custody of his own child" and that "the paramount consideration is the welfare of the child." Id. at 586, 106 S.W.2d at 560.

The next time that we addressed a custody dispute between a parent and a non-parent was in In re Adoption of Female Child, 896 S.W.2d 546 (Tenn. 1995). In that case, a mother, believing that she could not take proper care of her daughter, asked another couple "to assume temporarily the responsibility of caring for the child." When that couple later petitioned to have custody of the child, the mother initially agreed, not fully understanding that she was surrendering full custody. When the mother realized her mistake, however, she challenged the petition. Although the trial court later awarded conditional custody to the mother, the Court of Appeals reversed and awarded custody to the adoptive couple, finding that the child's best interests were served by her remaining with the adoptive couple.

We reversed the judgment of the Court of Appeals, finding that the Tennessee Constitution, through its right of parental privacy, protects the right of natural parents to have the care and custody of their own children, unless that child's welfare is threatened by a danger of substantial harm. We also announced the standard to be applied in custody cases between parents and non-parents generally:

> Therefore, in a contest between a parent and a non-parent, a parent cannot be deprived of the custody of a child unless there has been a finding, after notice required by due process, of substantial harm to the child. Only then may a court engage in a general "best interest of the child" evaluation in making a determination of custody.

Id. at 548. Finding that the adoptive couple had introduced no proof showing that the mother's custody represented a danger of substantial harm to the child, we therefore ordered that the mother be given full, unconditional custody of her daughter.

The last time that we addressed parent versus non-parent custody disputes was in In re Askew, 993 S.W.2d 1 (Tenn. 1999), a case in which a non-parent successfully petitioned for custody of a child based only upon the fact that the child had been living with her for some time. Though the procedural history of this case was quite complex, the order initially removing custody from the natural mother did not find that the mother was unfit, that the child was a dependent and neglected child, or that a danger of substantial harm threatened the child's welfare. We reversed this order of custody to the non-parent, stating that absent any such findings, "the deprivation of the custody of her child has resulted in an abridgment of [the mother's] fundamental right to privacy." Id. at 5. Importantly, we further stated that "[i]n the absence of such a valid initial order, we believe that it would be unconstitutional for the natural mother to bear the burden of proving the absence of substantial harm." Id.

Examining the principles applied in each of these cases with respect to custody modification issues, a natural parent enjoys the presumption of superior rights under four circumstances: (1) when no order exists that transfers custody from the natural parent; (2) when the order transferring custody from the natural parent is accomplished by fraud or without notice to the parent; (3) when the order transferring custody from the natural parent is invalid on its face; and (4) when the natural parent cedes only temporary and informal custody to the non-parents. Consequently, when any of these circumstances are present in a given case, then protection of the right of natural parents to have the care and custody of their children demands that they be accorded a presumption of superior parental rights against claims of custody by non-parents.

Importantly, however, *none* of these previously recognized circumstances giving rise to the superior rights doctrine exists in this case. Instead, we are asked today to decide whether a fifth circumstance also warrants application of that doctrine: when the order transferring custody from the natural parent is valid in all respects, even though it results from the natural parent voluntarily surrendering full and custody of the child to the non-parent.

Though we have broadly recognized that the right of parental privacy in this state is fundamental, see, e.g., Hawk, 855 S.W.2d at 579, nothing in the language of our Constitution, nor in the volumes of our case law, suggests that the superior rights doctrine should assist a parent to obtain custody of a child when a valid court order properly transferred custody from that parent in the first instance. Nor is there any suggestion from these sources that our right to privacy extends so far as to warrant application of the superior rights doctrine even when that valid order results from the natural parent voluntarily consenting to give custody of the child to a non-parent. Because all of our prior cases discussing awards of custody to a natural parent from a non-parent have been those in which the initial transfer of custody from the natural parent was not accomplished with a valid court order or was not consensual, these cases cannot be properly used to "say what the law is" on this issue in Tennessee.

In this regard, the dissent in this case makes the same mischaracterization of our prior precedents as Mr. Blair. Quoting In re Knott, 138 Tenn. 349, 197 S.W. 1097 (1917), the dissent maintains that natural parents "cannot be deprived of [the right to the care and custody of their

children] without notice, and upon some ground which affects materially the future of the child." Id. at 355, 197 S.W. at 1098. With this general statement, we do not disagree. However, Knott was a case in which non-parents attempted to fully terminate a father's parental rights in an *adoption* proceeding, without making the father a party to the suit or even giving the father notice of the proceeding. As applied to this case, therefore, Knott stands as questionable authority to assert that the doctrine of superior parental rights should be applied in a custody modification proceeding.

Moreover, although the dissent quotes eloquent language from cases addressing the nature of parental rights generally, none of these cases addresses the rights of natural parents in custody *modification* proceedings. Rather, virtually all of these cases cited by the dissent deal with parental rights in areas not addressing custody. See Troxel v. Granville, 530 U.S. 57 (2000) (addressing parental rights to limit grandparent visitation); Parham v. J.R., 442 U.S. 584 (1979) (addressing parental rights and obligations concerning the voluntary civil commitment of their children); Prince v. Massachusetts, 321 U.S. 158 (1944) (addressing parental rights to the training and encouragement of the child's religious beliefs); Pierce v. Society of Sisters, 268 U.S. 510 (1925) (addressing parental rights to the education of their children); Lehr v. Robertson, 463 U.S. 248 (1983) (addressing the scope of parental rights in an adoption proceeding); Hawk v. Hawk, 855 S.W.2d 573 (Tenn. 1993) (addressing parental rights to limit grandparent visitation). The sole exception is Petrosky v. Kenne, 898 S.W.2d 726 (Tenn. 1995), a case that addressed parental rights to modify a *temporary* order of custody to a grandmother that was accomplished without actual notice to the father.

As such, each of these cases cited by the dissent is unhelpful to determine the precise issue before us today. Therefore, it may be useful to examine cases from other jurisdictions that have dealt with custody modification cases in which (1) a valid order awarding custody to a non-parent exists; and (2) the order resulted from the parent's voluntary decision to cede custody of the child to a non-parent.

### THE EFFECT OF A VALID ORDER TRANSFERRING
### CUSTODY TO A NON-PARENT

In arguing for the application of the superior rights doctrine, Mr. Blair does not specifically address what effect the presence of a valid court order awarding custody of Joy to her grandmother should have upon the analysis of this case. However, we view this fact as critical to the proper resolution of the issues here. Most other jurisdictions addressing this issue have largely concluded that the superior rights doctrine is not applicable when a natural parent seeks to modify a custody arrangement established by a valid order. Instead, these courts focus upon whether the change in custody would be in the best interests of the child.

In one such case, the Alaska Supreme Court addressed the issue of whether a natural parent seeking to modify a valid court order awarding custody to a non-parent must still "make the same threshold showing of a substantial change in circumstances as in a parent-parent case[.]" After reviewing cases from other jurisdictions, the court noted that "the modern rule is to impose the same

changed-circumstances requirements on parents who seek to modify a nonparent's court-ordered, permanent custody as on parents who seek to modify parental custody." C.R.B. v. C.C., 959 P.2d 375, 380 (Alaska 1998). When further asked what effect the presumption of parental rights had upon the burden of proof in change-of-custody cases, the Court answered that

> [o]nce a court has properly transferred custody from a parent to a nonparent, it does no good to apply the [parental preference] doctrine to weaken the substantial change requirement for modification. The proceeding that gave the nonparent custody will have enabled the parent to exercise the parental preference, and achieved the goal that leads us to treat parent-nonparent cases differently from other custody cases. *Having once protected the parent's right to custody, at the risk of sacrificing the child's best interests, we should not then sacrifice the child's need for stability in its care and living arrangements by modifying those arrangements more readily than in a parent-parent case.*

Id. (emphasis added). Consequently, while a parent is entitled to the presumption of superior rights in the initial custody determination, the Alaska courts will not permit that parent to modify a valid order without first showing that the change is in the best interests of the child.

The Texas Court of Appeals has recently reached a similar conclusion as to the diminished role of the superior rights doctrine in modification cases. In In re Ferguson, 927 S.W.2d 766 (Tex. App. 1996), a mother petitioned to have custody of her children returned to her from their paternal grandmother. The court of appeals denied the mother's petition, however, because she could not show that the modification of custody was in the best interests of her children. In discussing the effect of the superior rights doctrine in modification cases, the court stated that

> in an *original* custody proceeding, the court must heavily favor the parents by reason of the rebuttable [superior rights] presumption. If a nonparent rebuts the presumption in the original custody determination, the parents in a *subsequent modification* proceeding must meet the requirements for a change of custody set out in Tex. Fam. Code Ann. § 156.101 [requiring that the modification would operate to improve the child's conditions and would be in the child's best interests].

Id. at 768-69 (citations omitted and emphasis added).

Finally, as the Louisiana Court of Appeals has made clear, the superior rights doctrine is not absolute, and a parent cannot invoke its protections to overturn a valid court order placing custody of a child with a non-parent. In Millet v. Andrasko, 640 So. 2d 368 (La. Ct. App. 1994), a father petitioned to modify a previous consent order that awarded custody of his child to two distant relatives. Although the father argued that a natural parent was entitled to modify the previous order unless "compelling reasons" existed to deprive that parent of custody, the trial court disagreed and applied a best-interests-of-the-child analysis to deny the father sole custody.

The court of appeals affirmed, holding that the "compelling reasons" test did not apply in modification proceedings. Instead, the court concluded that a best-interests-of-the-child analysis was more appropriate given "the desirability that there be an end to litigation where a party has previously had a full and fair opportunity to litigate and the undesirability of changing the child's established mode of living except for imperative reasons." Id. at 371 (internal quotations omitted). As such, the court concluded that

> "[a]t a subsequent hearing to change custody awarded by a 'nonconsidered' decree we find that the burden of proof should be on the party seeking the change and the standard should be the same as is applicable in custody disputes between parents. Thus the natural [parent] who is seeking a modification of the consent judgment must show a material change in circumstances and that a change in custody is in the best interests of the child."

Id. (citing and quoting Hill v. Hill, 602 So. 2d 287, 289 (La. Ct. App. 1992)).[2]

As these cases demonstrate, parents in the initial custody proceedings enjoy a strong presumption that they are entitled to the physical custody of their children. However, having once protected the rights of natural parents to the care and custody of their children, no constitutional principle demands that natural parents again be afforded a presumption of superior rights in a subsequent modification proceeding. Of course, where an initial order does not exist, or is otherwise invalid, then the Constitution requires a court to apply the superior rights doctrine. However, because these circumstances do not exist in this case, we disagree that the Tennessee Constitution compels application of that doctrine in the face of a lawful and valid court order vesting custody of Joy in her grandmother.

### THE EFFECT OF VOLUNTARY PARENTAL CONSENT
### TRANSFERRING CUSTODY TO A NON-PARENT

In response, Mr. Blair argues that notwithstanding the presence of a valid order transferring custody of Joy to her grandmother, he is nevertheless entitled to invoke the presumption of superior rights because no court has found him to be an unfit parent. However, he does not address the effect that his voluntary consent to relinquish custody of his daughter has upon his ability to claim this supposed constitutional entitlement. In our view, though, the father's voluntary decision to give custody of his daughter to her grandmother only further undermines his argument that the Constitution commands application of the superior rights doctrine in this custody modification proceeding.

---

[2] A "non-considered" decree under Louisiana law is a stipulated judgment. Crowson v. Crowson, 742 So. 2d 107, 109 (La. Ct. App. 1999).

Several other jurisdictions have agreed that a parent's voluntary consent to relinquish custody of a child to a non-parent will nullify the effect of the superior rights doctrine in a custody modification proceeding. For example, in Price v. Howard, 484 S.E.2d 528, 537 (N.C. 1997), the North Carolina Supreme Court recognized that parents have the right to the care and custody of their children, but it also noted that these rights are not absolute. Indeed, the court stated that a parent may lose this right when

> his or her conduct is inconsistent with this presumption or if he or she fails to shoulder the responsibilities that are attendant to rearing a child. If a natural parent's conduct has not been inconsistent with his or her constitutionally protected status, application of the "best interest of the child" standard in a custody dispute with a nonparent would offend the Due Process Clause.

Id. at 534 (citations omitted). Applying this standard, the Price Court concluded that the voluntary relinquishment of indefinite custody to a non-parent was an example of conduct that was inconsistent with the parent's constitutionally protected rights. In remanding the case to determine whether a change in custody under these circumstances was in the best interests of the child, the court noted, rather poignantly, that "'[i]n this instance the welfare of the child is paramount. The dictates of humanity must prevail over the whims and caprice of a parent.'" Id. at 535 (quoting In re Gibbons, 101 S.E.2d 16, 22 (N.C. 1957)).

In Ex parte McLendon, 455 So. 2d 863, 865 (Ala. 1984), the Alabama Supreme Court recognized that "[a] natural parent has a prima facie right to the custody of his or her child." However, the court further concluded that "this presumption does not apply after *a voluntary forfeiture of custody* or a prior decree removing custody from the natural parent and awarding it to a non-parent." Id. (emphasis added). Further addressing the standard to be applied in modification of custody cases, the McLendon Court held,

> Where a parent has transferred to another [whether it be a non-parent or the other parent], the custody of h[er] infant child by fair agreement, which has been acted upon by such other person to the manifest interest and welfare of the child, the parent will not be permitted to reclaim the custody of the child, unless [s]he can show that a change of the custody will materially promote h[er] child's welfare.

Id. (citations omitted and alterations in original).

Finally, the Supreme Court of Mississippi has also recently considered the proper standard to be applied in custody modification proceedings "where the moving natural parent, or parents, have previously relinquished custody." In Grant v. Martin, 757 So. 2d 264, 266 (Miss. 2000), the court addressed a case in which a mother petitioned for the custody of her children after having earlier agreed to give full custody of them to their paternal grandparents. The court first noted that "[o]ur law clearly has a strong presumption that a natural parent's right to custody is superior to that of third parties, whether grandparents or others. This is as it should be." Id.

However, the Grant court then held that a natural parent who "voluntarily relinquishes custody of a minor child, through a court of competent jurisdiction, has forfeited the right to rely on the existing natural parent presumption [to modify an existing custody order]. A natural parent may reclaim custody of the child only upon showing . . . that the change in custody is in the best interest of the child." Id. Significantly, the court did not conclude its analysis upon examination of the parent's interests. Rather, it recognized that a voluntary relinquishment of custody by the parent demanded consideration of other interests.

As these cases powerfully demonstrate, a parent's voluntary consent to cede custody to a non-parent defeats the ability of that parent to later claim superior parental rights in a subsequent proceeding to modify custody. Presuming that a parent is afforded the opportunity to assert superior parental rights in the initial custody proceeding, then the parent's voluntary transfer of custody to a non-parent, with knowledge of the consequences of that transfer, effectively operates as a waiver of these fundamental parental rights.[3] Under these circumstances, therefore, the Constitution does not again entitle the natural parent to assert superior parental rights to modify a valid custody order, even if no court has previously found the natural parent to be unfit.

### THE PROPER STANDARD TO APPLY IN CHANGE OF CUSTODY CASES

Based on our prior case law interpreting Article I, section 8 in this context, and given the overwhelming authority from other jurisdictions on this issue, we conclude that our Constitution does not accord natural parents a presumption of superior rights to modify an existing and valid order of custody, even when that order results from the parent voluntarily agreeing to give custody to the non-parent. Though strong in many respects, no aspect of the fundamental right of parental privacy is absolute, and a parent who is given the opportunity to rely upon the presumption of superior rights in an initial custody determination may not again invoke that doctrine to modify a valid custody order. Absent proof of the custody order's invalidity or proof that the parental rights were not protected in the initial custody proceeding, the child's interest in a stable and secure environment is *at least* as important, and probably more so, than the parent's interest in having custody of the child returned.

Accordingly, we hold that a natural parent is not generally entitled to invoke the doctrine of superior rights to modify a valid custody order awarding custody to a non-parent. Instead, in the

---

[3] Importantly, the dissent maintains that "parents in many cases may make custodial decisions without fully understanding the legal ramifications of their choices." Characterizing the voluntary waiver of parental rights as a "trap for the unwary," the dissent expresses concern that parents may not fully understand the effect of such a waiver.

We fully agree with the dissent in this regard, and we emphasize here, as above, that a parent's voluntary relinquishment of custody must be made with knowledge of the consequences of that decision. Where a natural parent voluntarily relinquishes custody without knowledge of the effect of that act, then it cannot be said that these rights were accorded the protection demanded by the Constitution. As such, application of the superior rights doctrine in a subsequent modification proceeding would be justified. However, no such allegation has been made by Mr. Blair in this case.

absence of extraordinary circumstances—for instance, the natural parent was not afforded an opportunity to assert superior parental rights in the initial custody proceeding; the custody order is invalid on its face; the order is the result of fraud or procedural illegality; or the order grants only temporary custody to the non-parents—a trial court should apply the standard typically applied in parent-vs-parent modification cases:  that a material change in circumstances has occurred, which makes a change in custody in the child's best interests.  See, e.g., Nichols v. Nichols, 792 S.W.2d 713, 715-16 (Tenn. 1990).  As in all other cases, the burden of establishing these factors rests upon the party seeking the change in custody.  See Rogero v. Pitt, 759 S.W.2d 109, 112 (Tenn. 1988).

Citing Troxel v. Granville, 530 U.S. 57, 68 (2000) and Parham v. J.R., 442 U.S. 584 , 602 (1979), the dissent in this case posits that we have failed "to acknowledge the widely-accepted 'presumption that fit parents act in the best interests of their children.'"  Notwithstanding the fact that these cases are wholly inapposite—they address parental rights to limit grandparent visitation and to commit their children to civil institutions—we disagree that our decision today fails to acknowledge this important presumption in child custody cases.  To the contrary, we have reaffirmed this presumption as an essential part of the superior rights doctrine.  However, as we have gone to great lengths to demonstrate, this presumption shapes the initial decision of custody, and where a valid order exists transferring custody of a child away from a natural parent, the Constitution does not again compel that this presumption be given effect.

The dissent also maintains that our holding today works "to deny superior rights to a parent who voluntarily surrenders custody to a non-parent [and] will forever penalize parents whose decision to surrender custody was made with the best interests of the child as the paramount factor."  Again, we must disagree.  Nothing we have said today operates to punish or penalize natural parents, and in no way do we "forever" foreclose the possibility that a parent will be unable to regain custody of the child.

However, our decision today does recognize that the parental rights given great weight in initial custody determinations must be balanced with other interests once a valid custody order is in place.  In our view, the dissent gives too little weight to the interests of the child in a stable and secure environment, and it risks subjecting the child to "'the whims and caprice of a parent.'"  Price, 484 S.E.2d at 535 (citation omitted).  Indeed, if, as the dissent maintains, that a parent's voluntary decision to give custody to a non-parent is made "with the best interests of the child as the paramount factor," can we not also suppose that the best interests of the child should *again* be the paramount factor when deciding whether custody should be returned to the natural parent?  We see no compelling reason why the Constitution would command otherwise, provided that the rights of the parent were protected in the initial determination.[4]

_____

[4] In a similar vein, the dissent repeats in several places that our failure to recognize the doctrine of superior parental rights in a custody modification proceeding somehow represents "undue government interference" with a parent's right to the care and custody of his or her child.  Respectfully, however, a decision not to modify a valid order of custody, except upon a showing that a change in circumstances shows that such a change is in the best interests of
(continued...)

Moreover, generally applying the superior rights doctrine in custody modification proceedings as advocated by Mr. Blair would present practical problems for the administration of justice in this state. In giving effect to this doctrine in modification cases, Mr. Blair would essentially have us create a situation analogous to a show-cause process in which the custodial non-parent would have to show cause why the child should not be returned to the natural parent. In such a case, the natural parent would be entitled to have a child returned—even in the face of a valid order transferring custody away from that parent—unless the child's custodian can show that a change in custody would result in substantial harm to the child.

We believe that such a process would effectively render existing orders of custody to non-parents practically worthless. As one court faced with a similar dilemma has recognized,

> If the court were to find that the custodians of [the child] were required to prove extraordinary circumstances in order to retain custody of this child, it would be concluding that final orders of custody are worthless and that the custodian of a child could have no confidence in the court process since, upon demand of the natural parent, the legal custodian would bear the burden of proving that extraordinary circumstances required their continuing to have custody of the infant child. Requiring such a burden of proof to be borne by the respondents in a proceeding to modify a custody order would practically render the initial custody determination a Pyrrhic victory for the non-parent.

Darlene S. v. Justino L., 533 N.Y.S.2d 179, 182 (N.Y. Fam. Ct. 1988). We must respect valid orders of custody, and we will not lightly embrace a rule that effectively renders such orders without effect or worth.[5]

## APPLICATION OF THE STANDARD IN THIS CASE

---

[4] (...continued)
the child, is hardly an "undue" or "unwarranted" state interference with parental rights. Rather, the use of a best-interests standard is entirely "warranted" in this context because it recognizes that the existence of a valid order of custody demands consideration of interests other than those of the natural parent.

[5] Contrary to the standard advocated by Mr. Blair's, the dissent in this case argues for the adoption of a standard that would place the burden of proof upon the non-custodial natural parent to show that a change of custody would not substantially harm the child. This standard may indeed eliminate the similarity of modification proceedings to a show-cause process, but one may legitimately question whether forcing the natural parent to prove a negative proposition effectively advances that position.

More importantly, however, the standard proposed by the dissent is still wholly focused on the interests of the parent, with virtually no attention given to those of the child. Although discounted by the dissent, Mr. Blair's voluntary relinquishment of custody is significant because the waiver of his custodial rights, confirmed in a valid order of custody, significantly diminishes the constitutional importance that these rights would have otherwise assumed. Consequently, the child's interests in a stable and secure environment take on a more dominant role here in determining whether the father is entitled to have custody returned, and as such, we should also look to these interests in deciding whether to modify the valid order of custody.

-14-

Applying this standard to the present case, the "threshold issue is whether there has been a material change in circumstances occurring subsequent to the initial custody determination." See Placencia v. Placencia, 48 S.W.3d 732, 736 (Tenn. Ct. App. 2000). As the Court of Appeals has acknowledged, "[t]here are no hard and fast rules for determining when a child's circumstances have changed sufficiently to warrant a change of his or her custody." Solima v. Solima, 7 S.W.3d 30, 32 (Tenn. Ct. App. 1998). Nevertheless, the following factors have formed a sound basis to determine whether such a change has occurred: the change has occurred after the entry of the order sought to be modified and the change is not one that was known or reasonably anticipated when the order was entered, see Smith v. Haase, 521 S.W.2d 49, 50 (Tenn. 1975), and the change of circumstances is one that affects the child's well-being in a meaningful way, Hoalcraft v. Smithson, 19 S.W.3d 822, 829 (Tenn. Ct. App. 1999).

In this case, Mr. Blair asserts that material changes in circumstances are present due to his growing relationship with his daughter and to his purchase of a new home since 1995. As the Court of Appeals held in an earlier appeal in this very case, the development of a closer bond between parent and child is not typically deemed a material change in circumstances warranting a change in custody, because such a development is one "that is hoped for in granting regular visitation, not an unexpected circumstance." See Blair v. Badenhope, 940 S.W.2d 575, 576 (Tenn. Ct. App. 1996), *perm. to appeal denied*, Mar. 17, 1997. In addition, the non-custodial parent's purchase of a new home in a suitable neighborhood since 1995 cannot constitute a material change in circumstances because "[c]ustody is not changed because one parent is able to furnish a more commodious or pleasant environment than the other . . . ." Id. (citation omitted).

Importantly, we do not foreclose the possibility that the development of a stronger relationship between a child and the non-custodial parent could, in combination with other factors, support a finding of a material change in circumstances. However, the record here fully supports the trial court's finding that Joy's maternal grandmother has provided her with a loving, stable home and a caring environment. Indeed, no doubt because of these encouraging circumstances, Joy has excelled academically and has become involved in a variety of school and church programs. Because Joy's present environment with Ms. Badenhope is not one that adversely affects her well-being in any way, the interest in maintaining a stable and successful relationship between Joy and her grandmother weighs against any custodial change at this point. Cf. Taylor v. Taylor, 849 S.W.2d 319, 328 (Tenn. 1993).

Consequently, after carefully reviewing the record in this case, we are unable to say that the evidence preponderates against the trial court's finding that Mr. Blair has failed to show the existence of a material change in circumstances warranting a change in Joy's custody arrangement. See Hass v. Knighton, 676 S.W.2d 554, 555 (Tenn. 1984) (stating that the standard of review of factual findings in child custody cases is "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." (citing Tenn. R. App. P. 13(d)). Therefore, we affirm the judgments of the lower courts not to grant Mr. Blair's petition to modify the previous custody order awarding custody of Joy to Ms. Badenhope.

**CONCLUSION**

In summary, we hold that a natural parent cannot invoke the doctrine of superior parental rights to modify a valid order of custody, even when that order resulted from the parent's voluntary consent to give custody to the non-parent. Instead, a natural parent seeking to modify a custody order granting custody to a non-parent must show that a material change in circumstances has occurred, which makes a change in custody in the child's best interests. The judgment of the Court of Appeals is affirmed.

Costs of this appeal are assessed to the appellant, Mr. Arthur Blair.

_____
WILLIAM M. BARKER, JUSTICE
