IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 3, 2002

# E. C. MITCHELL v. LARRY W. MITCHELL

**Appeal from the Circuit Court for Davidson County**
**No. 00D84     Carol Soloman, Judge**

---

**No. M2001-01609-COA-R3-CV - Filed May 12, 2003**

---

This case comes before the Court upon consideration of the record and Appellant's brief pursuant to this Court's order filed on April 3, 2002.  Appellant, Evalina Casey Cheadle Mitchell, hereinafter referred to as the Mother, seeks relief from the trial court's *sua sponte* order requiring the parties to mediate certain issues, requiring the minor children to attend periodic counseling and requiring the parties to submit to counseling themselves.  We reverse the trial court's order and remand this case for a full hearing consistent with Tennessee Code Annotated section 36-6-401, *et seq.*

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., and PATRICIA J. COTTRELL, J., joined.

David L. Parker, Nashville, Tennessee, for the appellant, E. C. Mitchell.

Larry W. Mitchell, Nashville, Tennessee, Pro Se.

## OPINION

The parties were divorced by decree entered January 12, 2001, *nunc pro tunc* for December 22, 2000.  That decree read, in pertinent part:

> If at any time the Wife suspects that the Husband has been drinking alcohol while he has possession of the children, she shall immediately go and see the Husband.  If the Wife suspects that the Husband has been drinking alcohol when he has possession of the children or when he is in attendance at any of the children's sporting events or other extracurricular activities, the Wife shall take the children, and the Husband shall immediately go to CentraCare or a similar provider for a blood test to determine his alcohol level.  The Wife may make such a request based on her own observations or on those of a day care provider.  The Husband shall file the

results with the Court and send copies to counsel for both parties. In the event that the Husband's blood tests positive for alcohol, all of his visitation shall be suspended immediately, and shall not recommence unless and until he proves to the Court that he is fit for visitation. In the event that the Wife makes the Husband take blood tests more than once or twice a month, the Husband's attorney shall bring it to the attention of the Court, and the Court may limit the ability of the Wife to order such tests.

. . . The Husband shall attend Alcoholics Anonymous meetings on a regular basis.

Pursuant to this decree, primary physical custody of the children was granted to the Mother. The Father was to have possession of the children every other weekend from Friday afternoon at 5:00 p.m. until Sunday evening at 6:00 p.m. In addition to his overnight visitation, the Father was awarded possession of the children "every other Friday (on weekends that are not his regularly scheduled weekends) from 5:00 p.m. until 8:30 pm."

After the divorce was granted, Mother filed a request for an emergency order terminating Father's possession of the children. The record before us does not include that pleading. Because counsel for Father was unable to attend the hearing, the matter was re-set, but the trial court, by order dated February 26, 2001, temporarily suspended Father's unsupervised visitation "pending a hearing on the motion of Mother . . . to terminate unsupervised visitation."

On the date set for that hearing, apparently, there was no hearing according to counsel for both parties. According to Father, counsel simply met in chambers with the trial court. The purpose of the hearing would have been to determine Mother's request to suspend visitation based upon the divorce decree's terms.

Even though there was no hearing, the trial court entered an order, dated March 26, 2001, modifying the divorce decree by, among other things, modifying Father's visitation schedule. In addition, the court appointed a named licensed psychologist, Ray Potts, as counselor for the children and ordered the psychologist to interview the parents "and begin seeing the children on a weekly basis as soon as possible after the March 7 hearing."[1] The parents were ordered to contact the psychologist to set up appointments, including appointments for the children. The order further stated, "the children's overnight Friday visitation with Father shall continue on March 16, 2001, contingent upon the approval of Dr. Potts in a letter to the court verifying that Father and Children are in on-going counseling and that overnight visits with Father are acceptable."

The court also modified the final divorce decree to require Father to attend Alcoholics Anonymous meetings four times a week "until the court deems otherwise." The court modified its "previous" order and allowed Father to have his regular Friday visitation on March 16 "provided

---

[1] It bears noting that the psychologist was not properly before the court as a party to this action or otherwise.

counsel for Father stops by as an officer of the court to check how the visit is going." Other specifics regarding this visitation were set out as well.

Father then filed a motion to set aside the March 26, 2001 order because it purported to be based on a "hearing" held March 7, 2001, which never took place. Father alleged that on March 7 counsel met with the trial court and reached an agreement regarding Mother's motion to suspend his visitation, that the parties intended to enter into an Agreed Order and further that: "Instead, the 'order' drafted by counsel for 1 (one) party alone was entered by the court, and said order does not include the terms to which counsel agreed, and as such is void."

This motion was first set for hearing, in an order that also granted Father visitation for Friday, April 27 and ordering that the children attend weekly therapy sessions with Dr. Potts. The motion was, by later order, referred to a mediator along with all the parties' pending motions. This order appointed a mediator, directed the parties to contact the mediator, and granted Father visitation on May 4 and May 11. The court again ordered that the children attend weekly appointments with Dr. Potts.

On May 3, 2001, Mother filed a motion asking the court to set aside the order referring all motions to a mediator. Mother alleged Father had failed to abide by the court's orders in various specifics and asked that her motions be heard and the court's orders enforced. On May 5, 2001, Mother filed a motion for an expedited hearing and asked the court to set aside, or to stay pending a hearing, its order requiring Mother to take the children to weekly counseling sessions. She alleged the children were being placed in the middle of their parents' dispute because Father told the children their visits with Dr. Potts would determine his visitation. She further alleged there was no evidence the children needed counseling, that Dr. Potts's services were not covered by her insurance, and other counseling services were available if the children needed counseling. Father responded that the mediation and counseling should proceed. Mother responded that the problem was Father's continuing refusal to abide by the court's earlier orders, that mediation during the divorce proceedings had been unsuccessful, and that she sought court intervention to enforce its prior orders.

On May 25, 2001, the court entered the order which is the subject of this appeal. That order denied Mother's motions to set aside the order to mediate all pending motions and her request to remove the requirement that the children attend weekly counseling sessions with Dr. Potts. It also specifically ordered:

> That the minor children of the parties be, and hereby are, required to attend weekly counseling appointments with Dr. Ray Potts, to be scheduled by the Mother . . . .

> That the parties be, and hereby are, required to begin mediation . . . .

> That each of the parties be, and hereby are, required to attend counseling 1 (one) time per month, and that the court shall advise them of the counselor to use.

Resolution of the issues in this appeal begins with the order of March 26, 2001, in which the court modified the existing divorce decree.

Once a valid order of custody has been issued, a court may modify that custody arrangement when both a material change in circumstances has occurred and a change of custody is in the child's best interests. *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Blair v. Badenhope*, 77 S.W.3d 137, 148 (Tenn. 2002). While "there are no hard and fast rules for determining when a child's circumstances have changed sufficiently to warrant a change of his or her custody," *Blair*, 77 S.W.3d at 150 (quoting *Solima v. Solima*, 7 S.W.3d 30, 32 (Tenn. Ct. App. 1998)), a material change of circumstance does not require a showing of a substantial risk of harm to the child. *Kendrick*, 90 S.W.3d at 570 n.5 (citing Tenn. Code Ann. § 36-6-101(a)(2)). To justify modification, the change must have occurred after entry of the order sought to be modified, and must be one that was not known or reasonably anticipated when the original order was entered, and must affect the child's well-being in a meaningful way. *Kendrick*, 90 S.W.3d at 570; *Blair*, 77 S.W. at 150. Any decree of modification entered after January 1, 2001, "shall incorporate a permanent parenting plan," which is a written plan for the parenting and best interests of the child. Tenn. Code Ann. § 36-6-404(a); 402(3). Section 404 further requires that a parenting plan include a residential schedule which designates in which parent's home the child will reside on given days during the year. *Id.* At 404(b). In a proceeding for modification of a custody and visitation arrangement, each parent is to submit a proposed permanent parenting plan. Tenn. Code Ann. § 36-6-405(a).[2] If the parties cannot reach agreement on a permanent parenting plan, the court may order appropriate dispute resolution proceedings "to determine a permanent parenting plan." If the parties do not reach agreement, the court is to establish the permanent parenting plan.

When fashioning the residential schedule, the court is instructed to take into account the factors listed in Tenn. Code Ann. § 36-6-404(b), "if the limitations of § 36-6-406 are not dispositive of the child's residential schedule." That section, in relevant part, allows the court to preclude or limit any provisions of a parenting plan if after a hearing, specified limiting factors are found. Tenn. Code Ann. § 36-6-406(d). Those factors include "an impairment resulting from drug, alcohol, or other substance abuse that interferes with the performance of parenting responsibilities." Tenn. Code Ann. § 36-6-406(d)(3). In its March 26, 2001 order, the trial court found, "Per its order entered in this matter on May 17, 2000, the Court has found . . . that Father does have an alcohol abuse or dependency problem, that Father's use of alcohol prior to or when he is in possession of the children should be eliminated . . . ."

First, the trial court could not modify the prior custody arrangement without (1) agreement of the parties, which could be, but apparently was not, reached through mediation or other forms of alternative dispute resolution, or (2) upon required findings made after an evidentiary hearing. Second, although the court could order the parties to mediation to attempt to agree on a modified

---

[2] Tenn. Code Ann. § 36-6-405(a) actually refers to modification of a parenting plan. Where, however, as in this case, there is no existing permanent parenting plan, the statute must be interpreted to refer to an existing custody arrangement including its visitation provisions.

permanent parenting plan, we find no authority to refer to a mediator a motion to set aside a court order. On the contrary, Mediation is a method of alternative dispute resolution. Tenn. R. Sup. Ct. 31 § 2. Even if the parties had agreed to the irregular procedure implemented by the trial court, that process will still have to fall within the definitions provided in the aforementioned Supreme Court Rule. This Court has recognized the nature origin and purpose of Rule 31, and finds the following instructive:

> The Supreme Court of Tennessee, in the exercise of its responsibility to supervise
>
> the administration of justice in our courts, has established "a system of court-annexed alternative dispute resolution methods" whose purpose is to "make the process of dispute resolution more efficient, more economical, and equally fair." Tenn. R. Sup.Ct. 31 pmbl. The procedures comprising this system have been promulgated as Rule 31 of the Rules of the Supreme Court. Rule 31 governs all court-annexed alternative dispute resolution. This court has previously determined that all court-annexed alternative dispute resolution proceedings must be consistent with Rule 31 and that courts have no authority to participate in any other type of dispute resolution process or in any manner inconsistent with Rule 31. *Environmental Abatement, Inc. v. Astrum R.E. Corp.,* 27 S.W.3d 530, 540 (Tenn.Ct.App.2000); *Team Design v. Gottlieb,* No. M1999-00911-COA- R3-CV, 2002 Tenn.App. LEXIS 508 (Tenn.Ct.App. July 18, 2002) (no Tenn. R.App. P. 11 application); *Harris v. Hall,* M2000-00784-COA-R3-CV, 2001 Tenn.App. LEXIS 856 (Tenn.Ct.App. Nov. 28, 2001) (no Tenn. R.App. P. 11 application filed).
>
> * * *
>
> Mediation is "an informal process in which a neutral person, called a mediator, conducts discussions among the disputing parties designed to enable them to reach a mutually acceptable agreement among themselves on all or any part of the issues in dispute." Tenn. R. Sup.Ct. 31 § 2(f). A "judicial settlement conference" is "a mediation conducted by a judicial officer other than the judge before whom the case will be tried." Tenn. R. Sup.Ct. 31 § 2(e). As the definitions make clear, a mediation, including one conducted by a judicial officer, is a settlement procedure; its purpose is to help the parties resolve their dispute by agreement, as an alternative to resolution through the well-established procedures governing litigation. Nothing in the definition of mediation or elsewhere in Rule 31 authorizes a mediator, including a judge acting as a mediator, to resolve the dispute by imposing his or her judgment as to the correct resolution. *Team Design,* 2002 Tenn.App. LEXIS 508, at *19-*20; *Harris,* 2001 Tenn.App. LEXIS 856, at *13-*15. If the parties are unable in mediation to reach an agreeable solution, they retain their rights to have the courts resolve their dispute through litigation.

-5-

*Thomas v. Thomas* M2002-01226-COA-R3-CV, 2002 WL 1787950, *2-3 (Tenn.Ct.App.,August 2, 2002) (footnotes omitted.).

Nothing in Rule 31 gives to a mediator the authority to render a decision on the legality or enforceability of an order of a court. Moreover, the record includes no evidence that the children were in need of counseling. Again, the parents could have agreed on counseling as part of a parenting plan, but in the absence of such agreement, a hearing would be necessary to determine if counseling for the children or the parents was indicated. The court neither approved a proposed permanent parenting plan submitted by one of the parties nor crafted one itself. Any modification of an existing custody arrangement must include such a plan.

For these reasons, the Court reverses the orders of the trial court entered subsequent to the January 21, 2001 decree of divorce, and remands this case to the end that a hearing be had and proof taken concerning the suitability of the current visitation and custody arrangement in the best interest of the children. This cause is therefore remanded with costs on appeal assessed against the Father, for which execution may issue.

 

_____
WILLIAM B. CAIN, JUDGE