IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 8, 2007 Session

## IN THE MATTER OF B.C.W.
## JOHN GREGORY WILSON v. NAOMI JONES, ET AL.

**Direct Appeal from the Juvenile Court for Davidson County**
**No. 9619-30975 (97-06818)   Betty Adams Green, Juvenile Judge**

**No. M2007-00168-COA-R3-JV - Filed February 19, 2008**

This is an appeal from the dismissal of a petition to modify custody of a minor child. The trial court determined that the petitioner, the natural father of the child, should not be afforded the superior rights of a parent. We disagree and reverse.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Juvenile Court Reversed and Remanded**

DONALD P. HARRIS, SR.J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and WALTER C. KURTZ, SP. J.,, joined.

Connie Reguli, Brentwood, Tennessee, for the appellant, John Gregory Wilson.

Vicky V. Klein, Madison, Tennessee, for the appellees, Geoff Jones and Deborah Ann Jones.

**OPINION**

The minor child, B.C.W., was born out-of-wedlock on December 23, 1996. At the time, his mother, Naomi Jones, was sixteen years of age and living with her parents, Geoff and Deborah Jones. The father of the child, John Gregory Wilson, was eighteen years of age and was living his parents. He was working at the time and was still in high school.

Prior to the birth of the child, Geoff and Deborah Jones obtained from the Juvenile Court of Davidson County an order, entered on December 17, 1996, appointing them the guardian of the unborn child of Naomi Jones. The order contained a provision that the rights of the putative father were "reserved pending service." Pursuant to a voluntary acknowledgment of paternity by Mr. Wilson, an order of paternity was entered April 8, 1997.

On May 27, 1997, Naomi Jones and Mr. and Mrs Geoff Jones filed a petition to set child support in the Juvenile Court of Davidson County. At the time, Naomi Jones was still living with her parents in Joelton, Tennessee, and was mainly the one who took care of B.C.W. John Gregory Wilson was still in high school and living with his parents in Goodlettsville, Tennessee. An attorney

was retained to represent Mr. Wilson. The attorney filed an answer in his behalf and a counter-petition seeking to establish a visitation schedule. The parties met in court on June 30, 1997, and entered an agreement with regard to both child support and visitation. The order incorporating the agreement made no reference to custody of B.C.W. It provided, however, that the child support payments be made to Geoff Jones. Sometime following this order, Naomi Jones moved out of her parents' residence leaving B.C.W. to the care of Geoff and Deborah Jones.[1]

Mr. Wilson exercised his visitation privileges and paid child support pursuant to the agreement. Mr. Wilson's mother, assisted the Jones by providing day-care while Deborah Jones was at work. Eventually, Mr. Wilson married and moved to Greenbrier, Tennessee. He expressed a desire to have B.C.W. live with him. B.C.W. expressed a desire to live with his father and was allowed to move in with Mr. Wilson. As a consequence, Mr. Wilson filed a petition to change custody on October 21, 2002, but that petition was withdrawn when after about six weeks B.C.W. returned to the home of Deborah and Geoff Jones. B.C.W. was apparently unhappy because of marital difficulties between Mr. Wilson and his wife, which later ended in divorce. Thereafter, Mr. Wilson continued paying child support and exercising visitation in accordance with the 1997 order.

In August 2004, Deborah and Geoff Jones were divorced. Deborah Jones moved from the family residence with B.C.W. Thereafter, B.C.W. periodically stayed with Geoff Jones and was with Mr. Wilson during his regularly scheduled visits. On October 4, 2004, Mr. Wilson filed a petition to change custody in the Juvenile Court of Davidson County alleging a change of circumstances. He later amended his petition alleging he should be awarded custody of B.C.W. because of his superior parental rights.

In early 2006, Mr. Wilson had remarried and was living with his wife, her child, and his second child. Beginning in February 2006, B.C.W. alternated weeks living with his father and his grandmother, Deborah Jones. Then beginning December 1, 2006, he once again began living with his father except for visitation with his grandparents on an every other weekend basis. That arrangement continued until the hearing of this case on January 10, 2007.

Following the hearing, the trial court determined the standard to be applied was whether there had been a material change of circumstances since the 1997 order. Finding no material change of circumstances, the court dismissed Mr. Wilson's petition for change of custody. Mr. Wilson has appealed alleging the trial court erred by applying the material change of circumstances standard rather than the superior parental rights doctrine. He also alleges the trial court erred by not finding the *de facto* change of custody to Mr. Wilson was a material change in circumstances warranting a change of custody.

The standard of review of a trial court sitting without a jury is de novo upon the record. Wright v. City of Knoxville, 898 S.W.2d 177, 181 (Tenn. 1995). The trial court's findings of fact are presumed correct and will not be overturned on appeal unless the evidence preponderates against

---

[1]While Naomi Jones was named a respondent and properly made a party to this action, she did not appear at the hearing or otherwise participate in the trial of this case.

them. Tenn. R. App. P. 13(d); Kirkpatrick v. O'Neal, 197 S.W.3d 674, 678 (Tenn. 2006); Bogan v. Bogan, 60 S.W.3d 721, 727 (Tenn. 2001). No presumption of correctness attaches to the trial court's conclusions of law. S. Constructors, Inc. v. Loudon County Bd. of Educ., 58 S.W.3d 706, 710 (Tenn. 2001).

At the outset, it must be noted that the standard applied to custody disputes between parents and non-parents is very different from the standard applied to disputes involving two parents. In disputes between legal parents, trial courts determine a child's best interests in light of the comparative fitness of the parents. In re C.K.G., 173 S.W.3d 714, 732 (Tenn. 2005); Parker v. Parker, 986 S.W.2d 557, 562 (Tenn. 1999); Bah v. Bah, 668 S.W.2d 663, 665-66 (Tenn. Ct. App. 1983). In custody disputes between parents and non-parents, the comparative fitness analysis cannot be used because it fails to take into account that the custody claims of biological parents and the custody claims of third parties do not have the same legal weight. Ray v. Ray, 83 S.W.3d 726, 731 (Tenn.Ct.App.2001). The Tennessee Supreme Court has held that the Tennessee Constitution protects a natural parent's fundamental right to have the care and custody of his or her children. Blair v. Badenhope, 77 S.W.3d 137, 141 (Tenn.2002); Nale v. Robertson, 871 S.W.2d 674, 680 (Tenn.1994); Hawk v. Hawk, 855 S.W.2d 573, 579 (Tenn.1993). Parental rights are superior to the rights of others and continue without interruption unless a parent consents to relinquish them, abandons the child, or forfeits parental rights by conduct that substantially harms the child. Blair, 77 S.W.3d at 141; O'Daniel v. Messier, 905 S.W.2d 182, 186 (Tenn.Ct.App.1995).

Courts deciding initial custody disputes must give natural parents a presumption of "superior parental rights" regarding the custody of their children. Blair, 77 S.W.3d at 141. In an initial custody dispute involving a parent and a non-parent, a natural parent may only be deprived of custody of a child upon a showing of substantial harm to the child. In re Adoption of Female Child, 896 S.W.2d 546, 548 (Tenn.1995). The non-parent has the burden of establishing by clear and convincing evidence that the child will be exposed to substantial harm if placed in the custody of the parent. Ray, 83 S.W.3d at 732-33; Hall v. Bookout, 87 S.W.3d 80, 86 (Tenn.Ct.App.2002). It is only after a clear showing of substantial harm that a court may engage in a "best interest of the child" analysis. In re Adoption of Female Child, 896 S.W.2d at 548.

A different standard applies, however, when a natural parent is seeking to modify an existing court order awarding custody to a non-parent. Absent specific extraordinary circumstances, a parent is not afforded "superior parental rights" to custody when a valid court order properly transferred custody from that parent to a non-parent in the first instance. Blair, 77 S.W.3d at 143. That is because a parent who is given the opportunity to rely upon the presumption of superior rights in an initial custody determination may not again invoke that doctrine to modify a valid custody order. Id. at 148. This reasoning applies in cases where the parent voluntarily ceded custody to the non-parent when the original custody order was entered. Id. Presuming that the parent was afforded the opportunity to assert superior parental rights in the initial custody proceeding, then the parent's voluntary transfer of custody to a non-parent, with knowledge of the consequences of that transfer, effectively operates as a waiver of his or her fundamental parental rights. Id. at 147. In such a case, the parent seeking a modification must show that a "material change in circumstances" has occurred, which makes a change in custody in the child's best interest. Id. at 139.

-3-

In Blair, supra, the Tennessee Supreme Court enumerated the "extraordinary circumstances" in which a parent would be able to assert superior parental rights in a modification proceeding. A natural parent still enjoys the presumption of superior rights when no order exists that transfers custody from the natural parent; when the order transferring custody from the natural parent is accomplished by fraud or without notice to the parent; when the order transferring custody from the natural parent is invalid on its face; and when the natural parent cedes only temporary and informal custody to the non-parents. Id. at 148. The Blair court also noted that "[w]here a natural parent voluntarily relinquishes custody without knowledge of the effect of that act, then it cannot be said that these rights were accorded the protection demanded by the [Tennessee] Constitution. As such, application of the superior rights doctrine in a subsequent modification proceeding would be justified." Id. at 148, n.3.

After considering the foregoing principles, we have determined the trial court, in this case, should have afforded Mr. Wilson superior parental rights. The December 17, 1996 order appointing Geoff and Deborah Jones the guardians of the unborn infant was obtained without notice to Mr. Wilson, specifically reserved his rights and, thus, had no legal significance with regard to the relinquishment of his superior parental rights. It may have had a factual significance, however. While it is not clear from the record whether Mr. Wilson knew of the guardianship order, if he did, he may have assumed the court had already acted with regard to placement of the child and the rights reserved to him in that order related to his visitation privileges.

It is also significant that B.C.W.'s mother, Naomi Jones, was a party in the petition brought by the Jones' in May 1997 seeking an order of child support. While "M&M Jones" were also named as parties, the petition listed Naomi Jones, her address and social security number as the petitioner. Thus, this was not a case where Mr. Wilson would have asserted his superior parental rights since it is an action between two natural parents. The order entered June 30, 1997, based upon the petition, counter-petition and the agreement between parties does not specifically grant custody of B.C.W. There simply was no order granting custody to Geoff Jones and Deborah Jones. Geoff Jones and Deborah Jones assert that by entering into the agreement, it may be inferred Mr. Wilson consented to the their having custody. Again, one of the petitioners in the 1997 proceeding was the natural mother of the child. At the time, Naomi Jones was living in her parents home taking care of the infant. Under those circumstances, in our view, Mr. Wilson cannot be deemed to have surrendered his superior parental rights by inferentially agreeing that his infant son should be with the child's mother. We are, moreover, of the opinion that there are significant hazards in *inferring* that a parent consented to granting custody to a non-parent such that the parent would be deemed to have relinquished his or her parental rights. Since a natural parent does not lose parental rights when custody is ceded on a temporary or informal basis, see Blair, 77 S.W.3d at 148, the evidence must establish the change of custody deemed consented to was intended to be permanent. That issue was not addressed one way or the other in the case before us.

Additionally, Mr. Wilson testified that he did not understand he was giving up any rights to the future custody of his son by entering into the June 1997 agreement on child support and visitation. That testimony was not refuted. It was not until almost five years later that Blair was decided, and even under that decision, Mr. Wilson could not be deemed to have relinquished his

superior parental rights if he did not understand that would be the consequence of entering into the agreement.

Finally, Geoff Jones and Deborah Jones asserted during oral argument of this case that Mr. Wilson should not be afforded superior parental rights because his petition to modify custody was not filed until seven years after the June 1997 agreement. In the recent case of In re R.D.H., No. M2006-00837-COA-R3-JV, 2007 WL 2403352 (Ct. of App. Aug. 22, 2007), the Western Section of this Court held that the length of the prior custody arrangement did not deprive a child's natural mother of her superior parental rights. Id. at *9. In that case, a grandmother had temporary custody of her grandchild about six and one-half years prior to the mother petitioning the court to have custody restored to her. We likewise decline to hold parental rights are relinquished by the mere passage of time. The father in the case before us has maintained contact with the child since birth by regularly exercising visitation and has satisfied his support obligations. While in some cases the passage of time may contribute to a change of custody resulting in substantial harm to the child, that cannot be true in this case since at the time of the hearing Mr. Wilson had *de facto* custody of B.C.W.

We have searched the record and find no suggestion that awarding Mr. Wilson custody of B.C.W. will result in substantial harm to the child. Accordingly, Mr. Wilson should have been awarded custody of the child in accordance with his superior parental rights. Our determination on this issue renders it unnecessary that we consider the issue raised concerning a material change of circumstances.

The judgment of the trial court is reversed and the cause is remanded for entry of an appropriate order granting custody of B.C.W. to John Gregory Wilson. The costs of this appeal are taxed to the appellees, Geoff Jones and Deborah Jones.

 

 

_____
DONALD P. HARRIS, SENIOR JUDGE